OVERLAND MOTOR COMPANY *v.* PACKARD
MOTOR COMPANY ET AL.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE
SEVENTH CIRCUIT.

No. 285.  Argued April 21, 1927.—Decided May 31, 1927.

1. An applicant for patent who cancels one of his claims without appealing, after a ruling finally rejecting it as unpatentable, announcing at the time his intention to file a divisional application

covering the same subject matter, does not abandon it nor estop himself from so renewing it with the consent of the Patent Office. P. 420.

2. Granting of patent upon such new application imports a waiver by the Office of objection based on the previous rejection. P. 421.

3. A bill to enjoin infringement of a patent can not be dismissed upon the ground of laches because the pendency of the application in the Patent Office was protracted by the applicant's delays in responding to Patent Office action, where such delays in no instance exceeded the period allowed by statute. Rev. Stats. § 4894. P. 422.

RESPONSE to questions certified by the Circuit Court of Appeals upon an appeal from a decree enjoining alleged infringements of a patent.

Mr. *Melville Church,* with whom Mr. *Clarence B. Des Jardins* was on the brief, for the Overland Motor Company.

Mr. *Frank Parker Davis,* with whom Messrs. *Philip Mauro, Clarence S. Walker,* and *Reeve Lewis* were on the brief, for the Packard Motor Company et al.

Mr. *Donald M. Carter* filed a brief as *amicus curiae* by special leave of Court.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This case comes from the Circuit Court of Appeals of the Seventh Circuit, upon a certificate of two questions for our consideration and answer. Section 239 of the Judicial Code, as amended by Act of February 13, 1925, c. 229, 43 Stat. 936. The suit is one in which the Packard Motor Car Company and the Wire Wheel Corporation seek to enjoin an alleged infringement by the Overland Motor Company of the Cowles Patent, No. 1,103,567, issued to Cowles on July 14, 1914, and owned by them. On August 25, 1899, Cowles filed an application which was duly granted July 13, 1900. His application disclosed the matter in suit. The Patent Office, however, required a division of claims, and he canceled all claims

as well as the description and drawing in the specification that supported such claims, bearing upon the subject matter of the present controversy. In that case the patent as granted covered merely the remaining claims. September 6, 1901, he filed another application, not a divisional application, disclosing and claiming, among other things, the subject matter in suit. This was pending in the Patent Office until January 21, 1913, when a patent issued for it. Certain claims made by him were repeatedly rejected by the .Patent Office. Cowles complied with the requirements of § 4894, Rev. Stats., requiring an applicant to reply to the action of the Patent Office within a year, but on seven different occasions he delayed more than eleven months before filing his response to the Patent Office ruling. On May 20, 1911, the Patent Office finally rejected the only claim remaining in the application which was directed to the subject matter in issue, holding that it was unpatentable on certain references. On May 17, 1912, Cowles canceled this finally rejected claim from his application, stating his intention to file a divisional application covering the subject matter of this claim. No such divisional application had ever been directed or suggested by the Patent Office. A patent was then (January 21, 1913) issued on other claims without any claim to the subject matter in issue. On August 6, 1912, Cowles filed an application for a patent which he stated was a division of the application filed September 6, 1901, and which disclosed and sought the claims in issue. The patent in suit was then issued on this application on July 14, 1914. During its pendency in the Patent Office, Cowles complied with the requirements of § 4894, Rev. Stats., although on one occasion he delayed over eleven months before responding to the Patent Office action. During the period from 1905 to 1912, trade journals of the United States and Great Britain published articles disclosing the subject matter in issue, and certain

British patents were granted, on subjects relating to such subject matter. The publications and patents represented independent work in Great Britain, and, as a result thereof, there was actual use of the subject matter in suit abroad during the pendency of the original and divisional applications above referred to. No product embodying the subject matter of the claims in suit appeared upon the market in the United States prior to the issuing of the patent in suit. Upon these facts, the first question certified is as follows:

" Did the applicant, in canceling the claim which was finally rejected on May 20, 1911, abandon such claim or estop himself from thereafter seeking it through a new application? "

We do not find in the statement of facts any circumstances which can be held to be an abandonment by Cowles of his claim for which he subsequently secured this patent. On May 20, 1911, the claim was rejected on account of its non-patentability in view of certain references. On May 17, 1912, he canceled the claim, stating at the time that it was his intention to file a divisional application covering this subject matter. After he had done this, on August 6th, less than four months after the cancellation, he filed the claim as a divisional application under the earlier case, and this new application, with the renewed claim, went to patent on July 14, 1914. We can not see why he was estopped by his failure to appeal from the final rejection. It is quite true that, after such rejection, the Commissioner of Patents might have refused to consider his divisional application, as he made it without suggestion or consent by the Patent Office. In a qualified and limited sense, a claim rejected as this was constitutes *res judicata* in favor of the Government and against the applicant. This is fully explained by Judge Morris in *In re Barratt's Appeal*, 14 App. D. C. 255, in speaking of a case presenting a similar question:

" While the rules that govern the finality and conclusiveness of adjudications at the common law do not apply, in the strict sense, to administrative or quasi-judicial action in the Executive Departments of Government, yet in administrative action, as well as in judicial proceeding, it is both expedient and necessary that there should be an end of controversy. Sometimes, the element of finality is inherent in the nature of the action taken; as, for example, when letters patent have been granted, they may not be recalled, and the rights of the parties holding them again investigated. Where rights have become vested as the result of legitimate executive action, such action is necessarily final, and it is not competent thereafter for executive action to divest them, either by way of a review of the proceedings or by any new proceedings instituted with that view. Especially is this principle applicable to the proceedings of the Patent Office, which are so nearly akin to judicial proceedings as to be most appropriately designated as quasi-judicial."

Following then the analogy, he finds that such a case as this may constitute *res judicata* in a sense; but he qualifies the statement in this important way:

" In what we have said we do not desire it to be understood that the Patent Office may not, if it thinks proper so to do, entertain and adjudicate a second application for a patent after the first application has been rejected. What we decide is, that it is not incumbent upon the office as a duty to entertain such applications, and that, if it refuses to entertain them, it has a perfect legal right so to do. An applicant is not legally aggrieved by such refusal."

This qualification is approved in the case of *In re Fay,* 15 App. D. C. 515; *In re Edison,* 30 App. D. C. 321, 323; and in *Gold* v. *Gold,* 34 App. D. C. 229.

As the Patent Office by granting the patent must be held to have waived any objection to the application

on the ground that the claim allowed had been rejected before by that Office, there is no reason why the appellees below should not be allowed to avail themselves of the waiver. We answer the first question in the negative.

Second: The second question was as follows:

" In the absence of any other excuse for lapse of time between Patent Office actions and responses thereto, than that the applicant was exercising a statutory right (R. S. Sec. 4894 as amended setting limit of one year for response), may the bill of complaint be dismissed for want of equity because of long pendency in the Patent Office? "

We think that under the decision of this Court in *United States* v. *American Bell Telephone Company,* 167 U. S. 224, and *Chapman* v. *Wintroath,* 252 U. S. 126, this question must also be answered in the negative.

By § 12 of the Act of 1861 (12 Stat. 246), it was required that all applications for patent should be completed and prepared for examination within two years after the filing of the petition, and, in default thereof, were to be regarded as abandoned by the parties thereto, unless shown to the satisfaction of the Commissioner of Patents that such delay was unavoidable. There was no provision limiting the time of the prosecution of the application in this section. By the Act of 1870 (16 Stat. 198), it was provided, in § 32, that all applications for patent should be completed and prepared for examination within two years after the filing of the petition, and in default thereof, or upon failure of the applicant to prosecute the same within two years after any action therein, of which notice shall have been given to the applicant, they should be regarded as abandoned by the parties thereto, unless shown to the satisfaction of the Commissioner that such delay was unavoidable. This provision of the Act of 1870 was carried into the Revised Statutes as § 4894, and so the statute stood until 1897, when, by 29 Stat. 692, § 4894 was amended as follows:

"All applications for patents shall be completed and prepared for examination within one year after the filing of the application, and in default thereof, or upon failure of the applicant to prosecute the same within one year after any action therein, of which notice shall have been given to the applicant, they shall be regarded as aban-doned by the parties thereto, unless it be shown to the satisfaction of the Commissioner of Patents that such delay was unavoidable."

Counsel for the alleged infringer says, that even with the time limit for action on the part of the applicant thus reduced to one year, it becomes easily possible for an applicant, after an action by the Patent Office upon his application, to delay for the full period of a year his response to such action, and however promptly the Patent Office may again act, he can delay another full year before replying to it, and thus, by waiting a year after each official action, (1) keep his application pending so as to enable him to withhold, indefinitely, his invention from the public, (2) add claims to his application covering the independent intervening developments of others, and (3) postpone the time when the public may enjoy the free use of the invention—all contrary to sound public policy.

The answer to this argument is that the matter is entirely within the control of Congress, and, in order to avoid the evil suggested, Congress may reduce the time within which one who is seeking an adjustment with the Patent Office, in order to obtain a patent, shall act upon receipt of notice of a decision of the Patent Office in the course of the application through that office. Congress, as we have seen by the history of the statute, reduced this time from an indefinite period in 1861 to two years in 1870, and to one year in 1897, and, as provided in the last Congress, to six months. Act of March 2, 1927, c. 273, 44 Stat. 1335.

During the pendency of the application in this case, the period allowed was one year. We do not know on what principle we could apply the equitable doctrine of abandonment by laches, in a case where the measure of reasonable promptness is fixed by statute, and no other ground appears by reason of which laches could be imputed to the applicant.

In *United States* v. *American Bell Telephone Company,* 167 U. S. 224, the Government brought a proceeding in equity to cancel a patent on the ground that it had been fraudulently secured, and part of the fraud of the patentee was that he had unreasonably delayed the obtaining of the patent, by collusion with officials of the Department, through their non-action, and thus postponed the period during which the monopoly of the patent was to continue. The court found no evidence of any collusion or fraud by the officials of the Department or undue or improper influence exerted or attempted to be exerted upon them. It said that Congress had established a department with officials selected by the Government, to whom all applications for patents must be made, had prescribed the terms and conditions of such applications and entrusted the entire management of affairs of the department to those officials, and that when an applicant for a patent complied with the terms and conditions prescribed and filed his application with the officers of the department, he must abide their action and could not be held to suffer or lose rights by reason of any delay on the part of those officials. The court said:

" Neither can a party pursuing a strictly legal remedy be adjudged in the wrong if he acts within the time allowed, and pursues the method prescribed by the statute. . . . Under section 4886, Rev. Stat., an inventor has two years from the time his invention is disclosed to the

public within which to make his application, and unless an abandonment is shown during that time he is entitled to a patent, and the patent runs as any other patent for seventeen years from its date. He cannot be deprived of this right by proof that if he had filed his application immediately after the invention the patent would have been issued two years earlier than it was, and the public therefore would have come into possession of the free use of the invention two years sooner. The statute has given this right, and no consideration of public benefit can take it from him. His right exists because Congress has declared that it should. . . . . A party seeking a right under the patent statutes may avail himself of all their provisions, and the courts may not deny him the benefit of a single one. These are questions not of natural but of purely statutory right. Congress, instead of fixing seventeen had the power to fix thirty years as the life of a patent. No court can disregard any statutory provisions in respect to these matters on the ground that in its judgment they are unwise or prejudicial to the interests of the public."

The case of *Chapman* v. *Wintroath*, 252 U. S. 126, was an attempt in an interference suit to defeat a patent granted to the Chapmans on a divisional application, for an improvement in deep well pumps, in which the claims were the same as the claims of a patent to Wintroath, the divisional application having been made twenty months later than the date of the issue of the patent to Wintroath. It was conceded that the claims had been disclosed in the Chapman patent, which had been applied for in 1909 but which had met unusual difficulties in the Patent Office and, though regularly prosecuted as required by law and the rules of the office, was still pending without having been passed to patent in 1915, when the controversy arose. It was admitted that the inven-

tion was clearly disclosed in the parent application of the Chapmans, but it was contended that their divisional application claiming the discovery should be denied, because of their delay of nearly twenty months in filing it after the publication of Wintroath's patent, when they had by law only one year. It was held by the Court of Appeals of the District (*Wintroath* v. *Chapman,* 47 App. D. C. 428) that the delay of more than a year constituted equitable laches and estopped the Chapmans from making their divisional claim. That holding had rested on a previous decision by the Court of Appeals in *Rowntree* v. *Sloan,* 45 App. D. C. 207. This Court held that under § 4886 of the Revised Statutes, as amended March 3, 1897, two years was granted in such a case before the right to file a divisional application had been lost. The Court based its decision that the statutory period could not be reduced by equitable considerations or those of public policy on the language which we have just quoted from Mr. Justice Brewer in his opinion in the *Telephone* case. The same doctrine is to be found in *Crown Cork & Seal Company* v. *Aluminum Company,* 108 Fed. 845, and *Columbia Motor Car Company* v. *Duerr & Company,* 184 Fed. 893.

The case of *Woodbridge* v. *United States,* 263 U. S. 50, is cited by counsel for the defendant to sustain their view that this is a case in which the doctrine of laches and abandonment may be enforced. The *Woodbridge* case was an exceptional one. Woodbridge had deliberately delayed the issue of the patent, which he could have had for the asking, for nine years. He had directed the Patent Office to keep the papers upon which such issue might have been granted in the secret archives of the Patent Office, there to remain for one year, a privilege which was given him under the law as it then existed. He failed after the one year to apply for the patent because, as he avowed in a subsequent application, he wished there-

by to postpone the period of its monopoly until a national emergency might arise in which his invention, which was for rifling cannon, should be more in demand than it then was. He was denied a patent, for failure to comply with the statute. Subsequently he secured special legislation imposing the condition that he should be granted the patent, provided the court should first be satisfied that he had not forfeited or abandoned his right to a patent by publication, delay, laches or otherwise. This Court held that the delay of nine years for the avowed purpose of postponing the period of the monopoly was laches and a breach of the condition upon which he might avail himself of the special congressional privilege granted him. Such a case has certainly no application here. The answer to the question should be in the negative.

*Questions answered " No."*