KOHLER v. CLINE ELECTRIC MFG. CO., Westinghouse Electric & Mfg. Co. and the Tribune Co.

District Court, N. D. Illinois, E. D. October 6, 1927.

No. 2361.

Parker & Carter and Winston, Strawn & Shaw, all of Chicago, Ill., for plaintiff.

McCormick, Kirkland, Patterson & Fleming, of Chicago, Ill., for defendants.

WILKERSON, District Judge. I agree with the master's statement of the rule to be applied in regard to structures claimed to anticipate a patent. Examining, in the light of this rule, the patents relied upon by the defendants, the contention that the patent is invalid for want of novelty, and is a mere aggregation of old elements, as shown by the prior art, cannot be sustained.

Defendants make the point that there is no mention of the so-called "flying paster" in the claims in suit. An invention, considered in itself, is neither an end nor a combination of both means and end, but is a means for the attainment of an end, and, as Mr. Robinson says, "though the idea of means cannot be contemplated by the mind apart from the idea of end, the end must be referred to only for the purpose of more fully comprehending the real nature of the means employed."

In Electric Signal Co. v. Hall Railway Signal Co., 114 U. S. 87, 5 S. Ct. 1069, 29 L. Ed. 96, it was said: "The thing patented is the particular means devised by the inventor by which that result is attained, leaving it open to any other inventor to accomplish the same result by other means."

The patent in suit is for a structure which may be so used that the flying paster may be made, and thereby paper supplied continuously to the printing press from a

series of rolls of paper. "Flying paster" is the printer's term for the result, secured by the device of the patent in suit, of connecting the end of one roll of paper to the expiring web of the other roll of paper, by moving the frame carrying the rolls of paper so that the web of the expiring roll is pressed by the belt against the adhesive end of the new roll, so as to connect the new roll with the web of the old roll and permit paper to be fed from the new roll, all of this being accomplished while the press is running. What is called the "flying paster" appears to be a part of the result of the operation of the mechanism described in the patent.

Defendants urge that, independently of the prior art, there is no invention in the combination of elements shown in the patent. It is said that the combination is a "self-evident and obvious structure." When we consider the magnitude of the business of printing newspapers, and the demand for reducing to a minimum the interval between the time a paper goes to press and the time It is on the street, it is inconceivable that this mechanism should not have been made and used long ago, if it is a self-evident and obvious structure. Certainly the desirability of creating some means to accomplish the result must have been apparent long ago.

Defendants resist the charge of infringement by saying that the belts of the infringing machines, which are geared to the printing presses, are driven at speeds less than those of the presses, and, consequently, that the belts act as drags or brakes, and not as feeding devices; the feeding being effected by the presses themselves, which serve to draw the webs of the paper into and through them against the constant slight tension imparted by the belts, which move at slightly lower speeds.

■ It is not the result, effect, or purpose to be accomplished which constitutes an invention, but the mechanical means or instrumentalities by which the object sought is to be attained. Patents cover the means employed to effect results. When the patentee has plainly described his mechanism, he has the right to every use to which his device can be applied, and to every way in which it can be utilized to perform its function, whether or not he was aware of all these uses or methods of use when he secured his patent. Miller v. Eagle Manufacturing Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121; Western Electric Co. v. La Rue, 139 U. S. 601, 606, 11 S. Ct. 670, 35 L. Ed. 294; Roberts v. Ryer, 91 U. S. 150,

23 L. Ed. 267; National Hollow Brake Beam Co. v. Interchangeable Brake Beam Co. (C. C. A.) 106 F. 693, 709; Goshen Sweeper Co. v. Bissell Carpet Sweeper Co. (C. C. A.) 72 F. 67; Stearns & Co. v. Russell (C. C. A.) 85 F. 218.

■ Accepting for the moment the evidence of defendants' experts, we have a case of a mechanism which can be operated in a way pointed out by the inventor to produce a given result. Defendants discover that, by operating the mechanism in a different way, precisely the same result may be achieved. Certainly defendants may not escape the charge of infringement by operating the mechanism differently from the way pointed out by the inventor, and obtaining a result identical with that obtained through the other method of operation.

■ At the hearing, great emphasis was placed by the defendants upon the point that plaintiff is barred on account of the delay in the patent office. This point has been settled in Overland Motor Co. v. Packard Motor Car Co. et al., 274 U. S. 417, 47 S. Ct. 672, 71 L. Ed. 1131, decided by the Supreme Court May 31, 1927, adversely to the contention of the defendants. Under that decision the patent is valid, and the plaintiff must not be put at a disadvantage, directly or indirectly, on account of proceedings in the Patent Office taken in accordance with the act of Congress. The Supreme Court says "that the matter is entirely within the control of Congress." Full effect must be given to the decision of the Supreme Court, and plaintiff's case is not to be tested by different rules from those generally applicable in patent cases.

Defendants assert in their answer "that the installation and use of the aforesaid apparatus for feeding paper to printing presses, etc., by the Chicago Daily News Company, by and with the knowledge and consent of the said Irving I. Stone, constituted an abandonment and dedication to the public of everything of a substantial character set forth in the specification of letters patent No. 1,124,673 and defined and covered by the claims thereof." It seems clear that, if the alleged public use here relied upon had been by one who was not the inventor, the evidence falls short of the standard required by the law to sustain defenses of this kind.

Defendants claim that there is a distinction between prior use by another and by the inventor himself. Accepting, for the moment, this contention, an examination of the testimony of the witnesses relied upon.

by defendants satisfies me that defendants' proof does not measure up to their own legal standard. It is impossible to read the testimony of these witnesses without having the conviction that it is not the kind of proof required to invalidate a patent. The master had the advantage of seeing witnesses; but, as the testimony appears in print, its infirmities are such that, if the case had been tried to a jury, the jury would have been warranted in rejecting the evidence of these prior use witnesses. The witnesses contradict each other upon material points. The court cannot invalidate a patent on evidence of this kind.

Defendants' own evidence is to the effect that the use relied upon was during a period when the inventor was experimenting for the purpose of testing the value of the invention by actual practice. In Agawam Co. v. Jordan, 7 Wall. 583, 607, 19 L. Ed. 177, the court said: "Undoubtedly an inventor may abandon his invention, and surrender or dedicate it to the public; but mere forbearance to apply for a patent during the progress of experiments, and until the party has perfected his invention and tested its value by actual practice, affords no just grounds for any such presumption." This rule has been reaffirmed and applied in many cases.

Comment is made by counsel for defendants upon the shifting of the burden of proof and the failure to call the inventor as a witness. It may be that the burden of going forward with the evidence would shift to plaintiff, if defendants' evidence established the prior use. But it should be borne in mind that it is the use which must be established. If defendants fail to show the use, and, on the other hand, show that what they call the use was really experimentation for testing the value of the mechanism, no burden rests on plaintiff to call the inventor or to produce any evidence at all. The burden is upon defendants to sustain the defense of abandonment, and that burden of proof, in the true sense of the word, does not shift. As I read the record, the result is the same, whether the publications, introduced by plaintiff, as to which complaint is made by defendants, are treated as properly in evidence or are rejected from the record.

I should add that I do not agree with plaintiff upon the point that defendants, having introduced the oath of the inventor as a part of the file wrapper, cannot be heard to contradict the statements in that document. Defendants did not introduce the file wrapper as proof of everything stated in the papers comprising it. They introduced it to show the proceedings in the Patent Office. It shows that the statutory oath was made; and, the patent having issued, there is a presumption of validity. The burden of showing abandonment is upon the defendants; but they are not precluded from so doing by offering the file wrapper containing the oath. The court has ruled that defendants have failed to sustain the burden resting upon them, in view of the oath of the inventor and the issuing of the patent.

The exceptions to the master's report are overruled and the report is affirmed. Decree accordingly, to be submitted by counsel for plaintiff on notice to defendants.