## OVERLAND MOTOR CO. v. PACKARD MOTOR CO. et al.

Circuit Court of Appeals, Seventh Circuit. December 1, 1927.

No. 3439.

Patents ⏖328—1,103,567, claims 9, 11, 18, for interchangeable automobile wheel, held valid.

Cowles patent, No. 1,103,567, claims 9, 11, and 18, for combination making effective an interchangeable automobile wheel, *held* valid, involving novelty, usefulness, and invention.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Adam C. Cliffe, Judge.

Suit by the Packard Motor Company and another against the Overland Motor Company. From a decree for plaintiffs (297 F. 474), defendant appeals. Affirmed.

C. B. Des Jardins and Melville Church, both of Washington, D. C., for appellant.

Frank Parker Davis, of Chicago, Ill., for appellees.

Before EVANS, PAGE, and ANDERSON, Circuit Judges.

EVAN A. EVANS, Circuit Judge. This suit was brought to enjoin infringement of the Cowles patent, No. 1,103,567, covering a motor vehicle. Certain questions presented upon a former argument were certified to the Supreme Court and answered by that court in an opinion announced May 30, 1927. 274 U. S. 417, 47 S. Ct. 672, 71 L. Ed. 1131.

The remaining question is one of validity, infringement not being questioned. Cowles says in his application:

"My present invention relates to improvements in motor vehicles, and particularly to the running gear and steering mechanism of such vehicles. An object of the invention is to provide light and strong steering hub, the pivotal supports of which are arranged in the revolving plane of the wheel. Another object is to provide front and rear wheel hubs so constructed as to permit of convenient and quick interchange of wheels, or the substitution of a spare wheel for a disabled one."

The three claims in suit read as follows:

9. "In a motor vehicle, the combination with the front and rear stationary axles, of steering spindles pivoted at the ends of the front axle, hub receiving members surrounding and rotatably mounted on said spindles, a driving shaft rotatably arranged within said rear stationary axle, hub receiving members of the ends of said rear axle and connected to be driven by said driving shaft, and wheels having hubs adapted to be removably secured, interchangeably, to said hub receiving members.

11. "In a motor vehicle, the combination with the front and rear stationary axles, of steering spindles pivoted at the ends of the front axle, hub-receiving members surrounding said spindles, anti-friction bearings between the members and spindles, a driving shaft arranged within said rear stationary axle, hub-receiving members at the ends of said rear axle and connected to be driven by said driving shaft, anti-friction supporting bearings for said rear stationary axle, and wheels having hubs adapted to interchangeably fit on said hub receiving members and readily removable therefrom without removing or exposing said anti-friction bearings.

18. "In a motor vehicle, in combination, stationary front and rear axles, steering spindles pivoted to the front axle, hub receiving members surrounding said spindles and having teeth or projections, roller bearings between said members and spindles, a driving shaft within said rear axle and projecting beyond the ends thereof, roller bearings between the driving shaft and the stationary rear axle adjacent the outer ends of the latter, hub receiving members secured upon the projecting ends of the driving shaft and having teeth or projections, wheels having hubs adapted to interchangeably fit said hub receiving members and adapted to be fitted upon and readily removed from said members without disturbing the bearings, said hubs having teeth or projections adapted to fit the teeth or projections on said hub receiving members, and means for retaining the hubs on the hub receiving members with the teeth or projections in interengagement."

The inspiration for this invention was a desire to overcome tire troubles in automobile operation. Tire difficulties were particularly vexatious and annoying during the early days of automobile travel. Numerous were the remedies offered. Some were quickly abandoned, while others helped in the solution of the problem. Probably the most satis-

factory and outstanding contributions were the extra wheel and the demountable rim. A serious objection to the extra wheel resided in the fact that the rear and front wheels were not interchangeable. The rear axle and rear hub differed in purpose and construction from the front ones. Cowles labored to remedy this trouble. His invention made it possible for the manufacturer to maintain but one standard running gear construction extending to axles and steering spindles, driving shafts and bearings, usable with either nondemountable wheels equipment or with demountable wheel equipment. Cowles contends that he "hit upon the happy thought of applying the demountable wheel idea to the ordinary driving shaft of a motor vehicle and the making commercially available and acceptable in that industry of the quick detachable wheel expedient by adapting it to both driving nonsteering and steering nondriving wheels in one and the same vehicle, so as to make interchangeable and spare wheel use universal."

Cowles' invention dates back to 1899. The art prior to the advent of the automobile was represented by wheels on wagons, buggies, and other vehicles. Their purposes and uses were quite different from those on the automobile and naturally the hub and wheel structures were different. The automobile necessitated a set of driving wheels and a set of steering wheels both equipped with pneumatic tires. The hub structure of the driving wheels differed from the hub structure of the steering wheels. To solve the problem of tire blows and wheel breakage, Cowles offered his conception of an interchangeable wheel with its unique hub receiving mechanism. It is therefore apparent that he approached a somewhat different problem than that which confronted the wagon maker.

There was nothing in the prior art that suggested his wheel or hub structure. It was concededly novel; likewise, useful. The extent of its use is involved in some doubt and dispute, but it can at least be described as extensive. Its commercial value was clearly established. Likewise, there was acquiescence in, and a recognition of, the validity of his patent by manufacturers and dealers.

Support for Cowles' claim of patentable novelty rests more upon the happy thought of an interchangeable wheel to solve pneumatic tire trouble and wheel breakage than in the uniqueness of the mechanical structure he devised to apply to both driving nonsteering and steering nondriving wheels. We would not, however, be justified in separating the happy thought from the combination which he devised to meet the problem. It is the meritorious concept plus the structure designated to effectuate the thought that justify the finding of validity.

In reaching this conclusion, we have not overlooked appellee's argument based upon the existence of a similar thought and structure by an English mechanic. Occurring at about the same time, meeting the same problem in about the same way, this fact is advanced to convince us that Cowles' structure merely evidenced the skill of the mechanic. The force of this argument cannot be gainsaid. In an appropriate case it may be well-nigh conclusive on the question of invention. For the existence of inventive genius is negatived by proof that different mechanics—when confronted by the same problem—solve it in the same way even though that way be a novel one.

However, we are not prepared to attribute to the inventor such superlative qualifications as would exclude all but supermen from the list. While there is a difference between the skill of the mechanic and the skill of the inventor, we must also recognize the existence of a twilight zone wherein the line of demarcation between the two is hazy and ill defined.

The advent of the automobile brought many problems for the mechanic, the manufacturer, and the inventor. The rewards obtainable for improvement or advance in the industry were large and attractive. A consuming interest in the industry and in each and every advance therein was manifested by the people of the United States and England. It is not surprising that, out of all those engaged in solving tire troubles, two, one in the United States and one in England, should have approached the problem in the same way and offered a similar solution.

The fact that a mechanic other than the patentee offered a somewhat similar solution does not, then, conclusively negative invention. Grant that in the instant suit (and each case must stand on its own facts, so far as invention is concerned) a border line case is before us. The determinative factors in such a situation are all on the side of the patent. Utility, large use, recognition by manufacturers, presumptions by reason of the Patent Office grant in the United States and in England, the conclusion of the District Judge, all unite to sustain the patent.

The decree is affirmed.