50 CCPA
**Application of Josef FRIED.**

**Patent Appeal No. 6848.**

United States Court of Customs
and Patent Appeals.

Feb. 13, 1963.

Merle J. Smith, Scotch Plains, N. J.
(Robert Alpher, New York City, and
Lawrence S. Levinson, Westfield, N. J.,
of counsel), for appellant.

Clarence W. Moore, Washington, D. C.
(Jack E. Armore, Washington, D. C., of
counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and
RICH, MARTIN, and SMITH, Judges,
and Judge JOSEPH R. JACKSON, Retired.

SMITH, Judge.

Appellant has appealed from a decision
of the Board of Appeals which affirmed
the examiner's rejection of claims 2, 6
and 12 of appellant's continuation-in-part
application, Ser. No. 677,763, filed August
12, 1957, based on a parent application,
Ser. No. 576,258, filed April 5, 1956. The
claims were rejected as being fully met
by the Colton et al. U. S. Patent No. 2,-
813,109 filed June 4, 1956 which issued
November 12, 1957. There is no issue
here as to whether the reference anticipates the appealed claims. The sole issue
arises from the refusal of the board to

give the appealed claims the benefit of the filing date of the parent application under 35 U.S.C. § 120 [1] which would antedate the Colton et al. patent as a reference. The board affirmed the rejection for two reasons: (1) The examiner's unappealed rejection of claims 15 and 16 as being unsupported by the disclosures in appellant's parent application is *res judicata* on the issue here, and (2) The appealed claims are not in fact supported by the disclosures in the parent application.

We shall consider the two reasons separately. Before we pass upon the board's second reason for affirmance, we will consider the first reason since if there is a proper rejection on *res judicata* the issue on the second reason becomes moot.

### (1) Res Judicata

■ While the Board of Appeals affirmed the rejection of the appealed claims on the basis of *res judicata,* we find no sound basis for this holding. The essential principles of *res judicata* are stated in Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597–598, 68 S.Ct. 715, 719, 92 L.Ed. 898, as follows:

"It is first necessary to understand something of the recognized meaning and scope of *res judicata,* a doctrine judicial in origin. The general rule of *res judicata* applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of

action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' Cromwell v. County of Sac, 94 U.S. 351, 352 [24 L.Ed. 195]. * * *

"But where the second action between the same parties is upon a different cause or demand, the principle of *res judicata* is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' Cromwell v. County of Sac, supra, 353 [of 94 U.S. 24 L.Ed. 195]. * * "

The issue which requires decision in the present case is whether, under 35 U.S.C. § 120, the invention claimed in claims 2, 6 and 12 of the appealed application is disclosed in the earlier filed parent application in the manner provided by the first paragraph of 35 U.S.C. § 112. The rejection in the parent case, which the board found to be *res judicata,* was that claims 15 and 16 of the parent case were not sufficiently supported by the disclosure. Since different claims are here presented the issues decided in the parent application and those to be here decided are not the same. A comparison of claims 15 and 16 of the parent application shows them to be significantly different in scope from the appealed claims here in issue.

[1] "§ 120. Benefit of earlier filing date in the United States
"An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States by the same inventor shall have the same effect, as to such invention, as though filed on the

date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application."

Claims 15 and 16 of the parent application are as follows:

15. A steroid selected from the class consisting of those of the general formulae [2]

wherein R is hydrogen, R' is β-hydroxy, and together R and R' is keto, R" is selected from the group consisting of hydrogen, α-methyl and α-ethyl, R'" is β-hydroxy, and together R" and R'" is keto, and X is an α-halogen of atomic number less than 18.

16. A compound of the structural formula

wherein Z is a member of the class consisting of carbinol and carbonyl groups.

Appealed claims 2, 6 and 12 are as follows:

2. 12α-Halo-17α-methyl-Δ⁴-androstene-11β,17β,-diol-3-one.

6. 12α-Halo-17α-methyl-Δ⁴-androstene-17β-ol-3,11-dione.

12. A steroid selected from the group consisting of 12α-halo-17α-methyl-Δ⁴-androstene-11β,17β-diol-3-one and 12α-halo-17α-methyl-Δ⁴-androstene-17β-ol-3, 11-dione.

To a person skilled in this art it is readily apparent that claims 15 and 16 of the parent application are broader than the appealed claims. Thus, the appealed claims all define a compound having only a *methyl group* in the 17α-position while in claim 15 of the parent application, R" and R'" include, in Markush form, constituents from a group consisting of hydrogen, α-methyl, α-ethyl, β-hydroxy and keto while in claim 16 of the parent application *any lower alkyl group* may be attached. In addition, claim 15 is broader than any of the appealed claims since it includes two other formulae which again have the several variations of R" and R'" attached at the 17 position. Thus, each of appealed claims 2, 6 and 12 are seen to be narrower in scope than claims 15 and 16 of the parent application which were rejected as unsupported by the parent disclosure. The issue here is, therefore, a different issue than that decided by the examiner.[3] While claims as broad

2. Claim 15 is shown as submitted to the examiner by amendment on August 29, 1957. It would seem, however, that R" and R'" should be directly attached to a 5 carbon ring rather than a 6 carbon ring as shown.

3 The present case provides cogent support for the requirement that the issues must be identical before *res judicata* is applicable. For purposes of illustra-

tion, suppose that the parent claim was to "any wheeled vehicle" and was rejected as unsupported by a specification which disclosed only examples of an airplane. Claims in a continuation application, which recite only "an airplane", are then presented. *If* the sole reason for rejection of the claims in the parent application was that the claim to "any wheeled vehicle" was not supported in the

as claims 15 and 16 of the parent application might fail for lack of an adequate disclosure, the parent application might contain disclosures adequate to support the narrower claims of the later filed application. Thus, *res judicata* cannot properly be applied in this situation to preclude a decision on the merits of the new issue here presented.

■ Even though the issues are different, any *matters actually litigated* in the first adjudication become binding on the parties in the second adjudication. Commissioner of Internal Revenue v. Sunnen, quoted supra. The board does not state, and we find no evidence in the record, that the question of support in the parent application for the *specific compounds claimed in appealed claims 2, 6 and 12* was passed upon in the proceedings which led to the rejection of claims 15 and 16 of the parent application. Therefore, we find no collateral estoppel which precludes applicant from securing a decision on the merits of the new issue here raised.

The solicitor, citing Overland Motor Co. v. Packard Motor Co., 274 U.S. 417, 47 S. Ct. 672, 71 L.Ed. 1131, asserts that "final rejections may be considered *res judicata* by the Patent Office at its option." We cannot see that this case supports the application of *res judicata* to the present appeal. The Overland case, decided 37 years ago and 26 years prior to enactment of the 1952 Act, involved the asserted infringement of a claim of a patent which had been granted on a divisional application of an earlier application. This *same claim,* as indicated in the opinion, had been finally rejected and then cancelled from the earlier application. The court stated that the Patent Office, in allowing the claim in the divisional application, had waived any objection on the ground that the allowed claim had been previously rejected. Thus, even if this decision does indicate that a final rejection may be held to be *res judicata* at the option of

the Patent Office, it is not applicable here where, as stated earlier, the appealed claims and claims 15 and 16 of the parent application are not the same. Therefore, *res judicata* does not properly apply and the Patent Office has no option to apply it.

■ It seems to us the clear intent of 35 U.S.C. § 120 and of the present procedures in the Patent Office relative thereto have established a practice under which an applicant may (1) appeal an examiner's adverse ruling or (2) acquiesce in the ruling and file a continuation application with new claims therein.

The Manual of Patent Examining Procedure, (MPEP), 2nd Ed., in pertinent part reads as follows:

*"201.07 Continuation*

"A continuation is a second application for the same invention claimed in a prior application and filed before the original becomes abandoned. The applicant in the continuing application must be the same as in the prior application, unless the continuation is a sole converted from a joint application. The disclosure presented in the continuation must be the same as that of the original application, i. e., the continuation should not include anything which would constitute new matter if inserted in the original application.

"*Where an application has been prosecuted to a final rejection an applicant may have recourse to filing a continuation in order to introduce into the case a new set of claims and to establish a right to further examination by the Primary Examiner.* * * * *"* [Emphasis added.]

This practice is expressly recognized in the following decisions of the Board of Appeals: Ex parte Davidson, 58 USPQ 343, Ex parte Smith, 88 USPQ 121, and Ex parte Pfleger, 131 USPQ 439.

parent, it is clear that the application of *res judicata* to deny the filing date of the parent to the appealed claim to an "airplane" leads to an incorrect result. Thus, it can be seen that use of *res ju-* *dicata* in a situation where the prior adjudication was based on claims in the parent broader than the claims presented in the continuation application may lead to an incorrect and unjust result.

The Patent Office now recognizes the procedure here adopted by appellant as being a proper response to the unfavorable action of the examiner.[4] Although MPEP, 2nd Ed. was in effect at the time of the examiner's final rejection, it is noted that MPEP, 3rd Ed., section 706.03 (w) states:

"A prior adjudication against the inventor on the same or similar claims constitutes a proper ground of rejection as *res judicata*. Where a different question of patentability is presented the rejection of *res judicata* does not apply.

"*The rejection should only be used when the earlier decision was a final, appellate one, such as a Board of Appeals decision where the time limit for further remedies has expired, or a decision by the Court of Customs and Patent Appeals. But see 201.11, last paragraph, for a special situation.* * * *" [Emphasis added.]

In support of its decision, the board and solicitor rely on the prior decisions of this court in Lavin v. Pierotti, 129 F.2d 883, 29 CCPA 1235, and Whittier v. Borchardt, 154 F.2d 522, 33 CCPA 1023. To the extent that these decisions may support the proposition for which they are here cited, i. e., that a final rejection of claims in a parent application for lack of supporting disclosure therein is *res judicata* upon the question of whether *different claims*, rejected on a different basis in a continuation application, are entitled

under the conditions specified in 35 U.S.C. § 120 to the benefit of the earlier filing date of the parent application, they are expressly overruled.

The board and solicitor also cite Ex parte Buc et al., (Bd. of Appls.), 114 USPQ 552, to support their position. However, we do not agree with the statement in the Buc et al. case that because the rejection of the parent case had become final upon the dismissal of the appeal for appellant's failure to file a brief, the finality and conclusive nature of the examiner's rejection "precludes any further consideration" of the issues presented by the appeal from the rejection of the continuation-in-part application and therefore decline to apply it here.

(2) *The Appealed Claims Are Not Supported by the Disclosure in the Parent Case*

■ Since the board and the examiner also acted on the merits of the appeal, in addition to finding the claims barred by *res judicata*, we now pass to a consideration of whether the board was correct in affirming the examiner's decision that appealed claims 2, 6 and 12 are not entitled to the benefit of the filing date of the parent application. It is therefore necessary to determine whether the parent application so disclosed the invention here claimed that the present copending application[5] shall have the same effect, insofar as antedating the Colton et al. reference, as though it had been filed on the date of the parent application.

4. We here observe that the express provisions of MPEP set forth an established Patent Office policy on which applicants for patents are entitled to rely in good faith in the orderly conduct of their business in the Patent Office. To depart from such policy as has been done here would, it seems to us, lead to such uncertainty on the part of applicants that they must necessarily traverse every ground of the examiner's rejection at each stage of the prosecution and appeal his adverse rulings lest the failure to do so returns in the guise of a binding *res judicata* which forfeits an applicant's privilege of foregoing his right of appeal and making the permissible corrective changes by filing a continuation applica-

tion. In addition, it seems to us that such an uncertainty in procedure leaves the patent examiner vulnerable to a charge of arbitrariness, bad faith and favoritism when he, as the representative of the Patent Office, exercises the *res judicata* "option" in one way in one case and in another way in a different case.

5. We have noted appellant's emphasis on the fact that the appealed application was filed before the parent case was finally rejected. We do not consider this fact to be particularly significant except that it establishes compliance with the portion of 35 U.S.C. § 120 which requires that the second application be "filed before the patenting or abandonment of

The invention relates to chemical compounds classified as steroids.[6] The compounds claimed in the appealed claims fall into two related groups.

The first group is defined in claim *2* as "12α -halo -17α -methyl - Δ⁴-androstene-11β, 17β-diol-3-one" which appellant asserts has the structural formula

The second group is defined in claim *6* as "12α-halo-17α-methyl- Δ⁴-androstene -17β-ol-3,11-dione" which appellant asserts has the structural formula

Claim 12 is in Markush form and includes both the groups claimed in claims 2 and 6.

Whether appellant is entitled under 35 U.S.C. § 120 to the benefit of the filing date of his parent application to support

or termination of proceedings on the first application."

6. We have been greatly assisted in securing a better understanding of the claims by the very helpful glossary of terms and symbols contained in appellant's brief and from which we are advised that the terms and symbols used in the claims have the following meanings:
*androstene*—refers to the basic poly-nuclear structure of the molecule symbolized by the four fused rings in the formula including one double bond.
*halo*—refers to one of the four halogen atoms chlorine, bromine, iodine, fluorine.
*methyl*—a methyl group $-CH_3$

*ol*—a hydroxy group –OH
*diol*—two hydroxy groups
*one*—a keto group –O=C
*dione*—two keto groups
*1, 2, 3, 4, etc.*—designations of the location of carbon atoms in the ring, referred to as "positions".
Δ⁴—designates a double bond linking the carbon atoms in positions 4 and 5.
α, β—designates the spatial position (i. e. below or above the plane of the ring) of the substituent group in the position indicated. In the formula the *alpha* configuration is shown by a single dotted line; the *beta* configuration by a single solid line.

an allowance of claims 2, 6 and 12 depends upon the sufficiency of disclosures in the parent application.

The parent application states that

"One of the objects of this invention is the provision of an advantageous process of preparing steroids of the androstane (including androstene and etiocholane) series having a 12α-halo substituent and an 11β-hydroxy (or 11-keto) substituent.

"Another object of this invention is the provision of certain compounds useful for their own physiological activity."

and further

"Among *the compounds of this invention* are those of the general formula:

wherein the 1,2 and 4,5-positions are either double-bonded or saturated (preferably the 1,2-position is saturated, and the 4,5-position is double-bonded), R is hydrogen, R' is β-hydroxy, or together R and R' is keto, and X is α-halo." [Emphasis added.]

The above serves as antecedent for the later disclosure:

"Aside from their use as androgens, *the compounds of this invention* are also useful intermediates in the preparation of the 17α-methyl, 17α-ethyl and 17β-hydroxy androstane derivatives. Thus the 12α-halo-17-keto steroids of this invention can be converted to 3-ethylene ketals or enamine derivatives of a secondary base (e. g. pyrrolidine) in the usual manner, and the resulting derivatives, with the 3-keto group protected, can be reacted * * * with a Grignard reagent. (e. g. methyl magnesium iodide or ethyl magnesium bromide)

to yield the corresponding 17α-substituted-17β-hydroxy (e. g. 17α-methyl-17β-hydroxy and 17α-ethyl-17β-hydroxy). [Emphasis added.]

"Both the 17β-hydroxy and the 17α-methyl (or ethyl)-17β-hydroxy derivatives possess high androgenic and anabolic activity. * * *"

It is appellant's position that the "compounds of the invention" in the parent case differ from the claimed compounds only in that the former compounds have a 17-keto group while the claimed compounds have substituted therefore 17α-methyl and 17β-hydroxy groups; that the above quoted portion of the parent application states that the 17-keto steroids may be converted to the corresponding 17α-methyl-17β-hydroxy steroids by protecting the 3-keto group as indicated "in the usual manner"; that the resulting derivatives can be reacted with a Grignard reagent; and that this conversion was a known procedure at the time appellant filed his parent application. The articles by Ruzicka et al., Heyl et al. and Dauben et al. and the text by Fieser et al. are relied upon by appellant in support of the argument that such conversion of 17-keto steroids to the corresponding 17α-methyl-17β-hydroxy steroids was a known procedure at the time the parent application was filed.

However, while appellant's parent application indicates that the 17-keto group of the steroid "compounds of the invention" therein may be converted to the corresponding 17α-methyl-17β-hydroxy steroids, it is clear, as pointed out by the examiner, that there is no disclosure of a specific method of preparation of the specific compounds claimed here and, as pointed out by the Board of Appeals, that there is no disclosure of a specific working example for preparing one compound here claimed. Since compounds here claimed are not named or identified by formula in the parent application, they can find support only as choices are made between the several variables involved.

The board also indicated, with respect to the above-quoted paragraph from the

parent application, that a precise starting material is not identified and noted the examiner's comment that said paragraph fails to disclose the unsaturation present in the starting material while observing that the appealed claims require a double bond between the 4 and 5 positions. We think the board was correct in finding a lack of support for the appealed claims in the parent application.

The several articles and the text relied upon by the appellant do not, in our opinion, overcome the insufficiency of the disclosure in the parent case with respect to the foregoing matters.

The foregoing considerations lead us to the conclusion that the invention disclosed in the appealed application was not in fact sufficiently disclosed in the parent application "in the manner provided in the first paragraph of section 112 of this title" to entitle appellant to rely on 35 U.S.C. § 120 to antedate the Colton et al. reference. For this reason, *and this reason only*, we *affirm* the decision of the board.

Affirmed.