Application of Walter S. KAGHAN, William J. Schmitt and Percy M. Kay.

Patent Appeal No. 7852.

United States Court of Customs and Patent Appeals.

Dec. 14, 1967.

Robert H. Bachman, New Haven, Conn. (Edward J. Mahler, New York City, of counsel), for appellants.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, ALMOND and SMITH, Judges, and WILLIAM H. KIRKPATRICK.*

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claims 6 and 7, all of the claims in the application entitled "Method for Improving Electric Glow Discharge Treatment of Plastic Materials." The application before us is serial No. 184,404 and was filed April 2, 1962 as a continuation-in-part of application serial No. 602,506 filed August 7, 1956.

The invention involves the corona discharge treatment of polyolefin film in order to make the surface of the film receptive to inks or other coating materials. The novelty of appellants' invention resides in providing a coating of chlorosulfonated polyethylene on one of the electrodes used to produce the corona discharge. The use of polyethylene and polyester coatings on such electrodes is old in the art, but appellants claim "unique and astonishing durability" of the chlorosulfonated polyethylene in this application.

Claim 6 is illustrative:

6. In the preparation of a polyolefin film having a surface rendered adherent to coating compositions by treatment with a high energy corona discharge between a pair of closely spaced substantially parallel electrodes one of which is grounded, one of said electrodes being a metallic roll and the other being a narrow elongated electrode, the process comprising providing one of said electrodes with a surface layer 0.05 to 0.25 inch in thickness of vulcanized chlorosulfonated-polyethylene having a non-conductive finely-divided pigment incorporated therein as an essential ingredient establishing a corona discharge at a potential of about 3,000 to 30,000 volts between the said electrodes, and passing said film through said discharge while in contact with the said surface layer.

In the parent application, appellants presented claims to the same process, but of somewhat different scope. The claims of the parent application were finally rejected by the examiner on the combination of a patent which showed the use of a polyethylene electrode coating in the same apparatus and commercial literature which describes chlorosulfonated polyethylene as having excellent "corona-resistance." The examiner held it to be obvious in view of this teaching of good corona resistance to substitute the chlorosulfonated polyethylene for the polyethylene coating of the prior art. The Board of Appeals affirmed this rejection.

Before the time for taking an appeal from the board's decision had expired, appellants, presumably relying on 35 U.S. C. § 120 and published procedures of the Patent Office, filed a continuation-in-part application, which is the application now before us. This application contains disclosure not in the parent application and, as noted above, the claims are similar but of different scope.

The examiner rejected the instant application both on art applied as in the parent application and on the ground of *res judicata*. However, the examiner's answer before the Board of Appeals stated:

Claims 6 and 7 stand rejected both on the art and on the ground of Res Judicata. To simplify the issue, the rejection on art is withdrawn. This

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

leaves claims 6 and 7 rejected on the sole ground of Res Judicata since there is *no patentable distinction* between these claims and claims 12–15 in the Parent Application 602,506 which went abandoned after the adversed [sic] Board decision rendered on January 30, 1962 in Appeal No. 235–63.

The Board of Appeals affirmed this rejection, and appellants filed an appeal to this court.

The sole question before us is whether, on these facts, the application of the doctrine of *res judicata* by the Patent Office is proper.

■ In their brief, appellants do not question whether the Patent Office, as an administrative agency, has the right to invoke the doctrine of *res judicata* in an ex parte proceeding. Rather, appellants assume that the Patent Office has that right, but argue that the use of the rejection on the facts here present constitutes a clear violation of the practices and published procedures of the Patent Office.

Specifically, appellants point to the "Manual of Patent Examining Procedure" section 706.03(w) which currently [1] reads:

706.03(w) Res Judicata

A prior adjudication against the inventor on the same or similar claims constitutes a proper ground of rejection as *res judicata*. * * *

The rejection should only be used when the earlier decision was a final, appellate one, such as a Board of Appeals decision *where the time limit for further remedies has expired,* or a decision by the Court of Customs and Patent Appeals. But see 201.11, last paragraph, for a special situation. [Emphasis added.]

"When making a rejection on res judicata, action should ordinarily be made also on the basis of prior art." See also 201.07.

The reference to 201.07 is to its second paragraph, as follows:

Where an application has been prosecuted to a final rejection an applicant may have recourse to filing a continuation in order to introduce into the case a new set of claims and *to establish a right to further examination* by the Primary Examiner. [Emphasis added.]

Appellants argue that they filed their new application before the time limit for further appeals had expired, and that this filing prevented the Board of Appeals decision from becoming a "final, appellate one."

Recognizing the differences of opinion in this court concerning the right of the Patent Office to make rejections on the basis of *res judicata,*[2] we will in this case follow the lead of appellants and assume *without deciding* that the Patent Office may, in a proper case, utilize a *res judicata* rejection. The issue we feel dispositive of this case is whether the Patent Office has waived its assumed right to use the *res judicata* rejection by statements made in its published procedures. See Overland Motor Company v. Packard Motor Company, 274 U.S. 417, 47 S.Ct. 672, 71 L.Ed. 1131 (1926); In re Fried, 312 F.2d 930, 50 CCPA 954; In re Hitchings, 342 F.2d 80, 52 CCPA 1141.

It seems to us that the sections of the MPEP relied upon by appellants clearly approve of the practice which was followed by appellants. MPEP section 201.-07 allows an applicant to file a continuation application and so establish a right to further examination by the examiner. Such continuation applications can be

---

1. Although this section of the MPEP has been somewhat revised since the date appellants filed their continuation-in-part application, neither party suggests that the changes are pertinent to the issues here involved.

2. See, for example, the dissenting opinion and Judge Rich's concurring opinion in In re Herr, 377 F.2d 610, 54 CCPA ——.

filed at any time before the "termination of proceedings on the first application." 35 U.S.C. § 120. Following a Board of Appeals decision, proceedings are considered terminated "when the time for appeal to the court or review by civil action has expired and no such appeal or civil action has been filed." [3] We interpret these passages as establishing the right of an applicant to file a continuation application following an adverse Board of Appeals decision within the time allowed for further appeal, and as establishing his right to have that application examined. A holding of *res judicata* without reliance on any other ground of rejection is not an examination on the merits of the application and so may not be used in such a situation.

This analysis is completely consistent with MPEP 706.03(w) which instructs the examiner not to use *res judicata* unless "the earlier decision was a final, appellate one, such as a Board of Appeals decision where the time limit for further remedies has expired."

Our reasoning in this case involves not only the statutes and the Rules of Practice, which have the force of law insofar as they are consistent with the statutes see 35 U.S.C. § 6; Land v. Dreyer, 155 F. 2d 383, 33 CCPA 1108, but also the MPEP. This manual is not provided for expressly in the statutes, but is primarily a set of instructions to the examining corps of the Patent Office from the Commissioner acting in his supervisory capacity. The Commissioner can and does change portions of these instructions frequently.

██ While the MPEP is primarily published for internal use, it is also made available to patent applicants and their lawyers as well as to the general public through the Superintendent of Documents. We take judicial notice of the fact that the manual is used frequently by patent lawyers and agents in advising applicants and in preparing their various papers for filing in the Patent Office, and also of the fact that examiners frequently cite provisions of the manual in their communications with patent applicants. Under these circumstances, we feel that an applicant should be entitled to rely not only on the statutes and Rules of Practice but also on the provisions of the MPEP in the prosecution of his patent application. As this court stated in a footnote to In re Fried, supra:

> We here observe that the express provisions of MPEP set forth an established Patent Office policy on which applicants for patents are entitled to rely in good faith in the orderly conduct of their business in the Patent Office.

We therefore hold that the Patent Office, by its own published procedures, has waived the right to apply a *res judicata* rejection in these circumstances.

Appellants urge us to declare their invention patentable on the ground that the examiner's withdrawal of the rejection based upon art should be considered "an acknowledgment that claims 6 and 7 are directed to patentably novel subject matter." The question of the art rejection was not before the board, however, and is not before us. Our decision is only that the *res judicata* rejection was erroneous.

During oral argument, appellants and the Solicitor discussed the application of In re Herr, supra, note 2, to the facts here presented. That case was handed down after the briefs were filed, and hence was not discussed therein. Since the parties did not have the opportunity to consider that decision in their written briefs, and since we think that reversal of the board is necessary on the arguments presented in the briefs, we have not considered the possible application of In re Herr to these facts.

The decision of the Board of Appeals is reversed.

Reversed.

WORLEY, C. J., and KIRKPATRICK, J., concur in the result.

---

3. Rule 197(c), Rules of Practice of the United States Patent Office in Patent Cases.