PACKARD MOTOR CAR CO. et al. v. OVERLAND MOTOR CO.

District Court, N. D. Illinois, E. D. April 11, 1928.

Rector, Hibben, Davis & Macauley, and Frank Parker Davis, all of Chicago, Ill., and Clarence S. Walker, of Boston, Mass., for plaintiffs.

Brown, Jackson, Boettcher & Dienner, of Chicago, Ill., Frederick P. Fish, of Boston, Mass., and Melville Church and Clarence B. Des Jardins, both of Washington, D. C., for defendant.

GEIGER, District Judge. The case is before the court upon the plaintiffs' motion for an injunction pendente lite upon a supplemental bill. Upon the original bill the case was heard by the District Court, and the issues involved the validity and infringement of claims 9, 11, and 18 of the patent. From the decree entered April 10, 1924, pursuant to an opinion filed the preceding March 22d (297 F. 474), an appeal to the Circuit Court of Appeals was immediately taken. On March 2, 1925, that court reversed the judgment, with directions to dismiss the bill; the ground being the laches of the patentee in the prosecution of his patent. Thereupon the plaintiffs were granted a rehearing by the Circuit Court of Appeals, with the result that on January 22, 1926, the case was certified to the Supreme Court of the United States for answer to two questions previously decided adversely to the plaintiffs. On May 31, 1927, the Supreme Court (274 U. S. 417, 47 S. Ct. 672, 71 L. Ed. 1131) answered the certified questions, rejecting the view originally taken by the Circuit Court of Appeals upon its reversal of the decree, thus necessitating the consideration of the case by the latter upon the issues of validity and infringement, and on December 1, 1927, the decree of the District Court was affirmed (22 F.[2d] 566); the determination involving, as the Circuit Court of Appeals puts it, the question of validity, "infringement not being questioned."

Notwithstanding the long pendency of the case and its vicissitudes just noted, notwithstanding contrariety of contention, the matter now before the court involves questions within entirely close compass, and, as I conceive, no facts which are open to fair controversy. This does not mean that the parties are agreed upon the manner in which facts which they mutually recognize must be dealt with. All that is meant is that, though the court is impressively cautioned to recognize and adhere to rules of great rigor upon considering an application for injunction pendente lite in a patent case, neither party has pointed out that evidentiary matter pertinently bearing on the disposition of the motion, the character and quality thereof, other than is now before the court, will be forthcoming.

On the contrary, it is hard to believe that, were the case before the court now on final hearing, either of the parties would offer much, if anything, in addition to the facts which both have now clearly disclosed, and which, being here, are conceived to be and are already dealt with by the parties as ultimate, thus necessitating a determination of their effectiveness to decide the issue one way or another just as upon final hearing. In the affidavits tendered in support of, or in opposition to, the plaintiffs' motion, or upon oral discussion of the case or briefs submitted, there is nothing to dispel the idea that each party, no matter how much is said to persuade the court to take one view or the other, recognizes the questions to be within close compass, and that their solution can hardly be aided by any further showing. Probably, if it were granted, either or both of the parties might exert efforts through the testimony of experts in further attempted elucidation of their respective positions. But it is believed that a careful study of what has now been presented, in the light of the previous history of the case and its record, which is before us, will satisfy one that, probably, such further endeavors would be cumulative only, and cannot weaken the basic position taken by one, nor strengthen that taken by the other, of the parties. The facts, on either side of the present controversy, appear to me to be not only undisputed, but incontrovertible.

In the informal discussion which will ensue, it has been deemed unnecessary to incorporate, except by reference, much of the descriptive detail of structures which must be considered. Counsel for the parties have seen fit to discuss the case largely upon the assumption that not only structural, but legal, differences may be apprehended and asserted upon references to exhibits, either physical or paper, whose details are not difficult to understand or to compare, no matter how variant contentions respecting conclusions may be.

The plaintiffs having indicated in the

original bill the three claims declared upon, and having charged infringement by reference to structures whose characteristics and names apparently were within the apprehension of the defendant, the latter tendered certain interrogatories, whose subject-matter were three different styles of wheels or structures, which are in the case as Exhibits 1, 2, and 3, and were asked, "Do the plaintiffs *charge* that the use or sale of * * * automobiles equipped with the particular type of wheel shown in the respective exhibits" *is an infringement* of *any* of the *claims of* letters patent (in suit) enumerated in the bill of complaint; and, further, in case of affirmative answer to any or all of the questions, what particular claims are charged to be infringed by any of the structures?

The plaintiffs' bill had charged, as a specific instance of the infringement by the defendant, "the use and sale by defendant to others to be used * * * of motor vehicles equipped with *detachable wheels*, made by the Budd Wheel Company * * * and known to the trade as 'Budd' wheels.". Of the three exhibits, subjects of interrogatories by the defendant, 1 and 2 are described as "detachable *wire* wheels made by Budd Wheel Company"; whereas Exhibit No. 3 is described as "detachable *disc* wheels made by Budd Wheel Company," and the defendant in its answer admitted the actual selling of the three types of wheels. The plaintiff responded to the interrogatories thus: That with respect to Exhibits 1 and 2 "the plaintiffs *charge* infringement" of all the enumerated claims; that with respect to *Exhibit 3* "the plaintiffs *do not charge infringement* of the claims enumerated in the bill of complaint *with reference to the particular construction shown in the drawing*, Defendant's Exhibit No. 3." (Italics supplied.)

The supplemental bill now seeks to bring within the comprehension of the suit, and a decree, the alleged infringement by the defendant in selling, for use upon motor vehicles, a structure, concededly before the court as one sold by the defendant, known as the "Whippet wheel." Its consideration, it is again confidently asserted, presents no matter of fact suggesting the necessity of proofs which would enable the court better to determine the basic contentions of the respective parties. Broadly, the plaintiffs invoke the patent and the asserted liberal estimate placed thereon by the appellate court; whereas the defendant rests alternately upon a detail of the plaintiff's claim of breadth, upon the legal identity of the

Whippet wheel with the subject-matter of interrogatory No. 3, above referred to, the negative answer to which in some way estops the plaintiffs, immunizes the defendant, if not the world, and, lastly, that the Cowles patent in no event can comprehend the defendant's present "Whippet" structure— that it is in truth noninfringing. And it is believed that the contentions of the parties may conveniently be considered and disposed of by recognizing at the threshhold of the case these more or less interrelated questions —interrelated in the sense that each has matter in common with the others:

(1) What has the appellate court determined with respect to Cowles that bears upon the scope of his invention in view of the art and the proofs in this case?

(2) What effect has the determination of defendant's infringement (specifically, Exhibits 1 and 2)?

(3) What is the effect, or the pertinency, of the interrogatory and answer thereto in respect of Exhibit 3?

(4) Regardless of the answer to the last question, is the court obliged to consider, or should it consider, the present question of infringement upon the assumption that Exhibit 3 (the disc wheel) was conceded, or should now *first be determined*, to be noninfringing; wherefore, if possible, the present Whippet construction be litigated as a development *therefrom*—that is, from the *disc* wheel (Exhibit 3) rather than as a development out of Cowles, or structures similar to those found to be infringing, and, if so found, hold it likewise noninfringing. In other words, must or should *that* be the avenue of approach?

(5) Does the Whippet wheel infringe?

In answering the first question, concededly the record of this case, including the views of the trial and appellate courts, both in their expressions and in their unavoidable implications, ought to furnish a pretty sure basis to determine the estimate and the scope of the Cowles patent. That is to say, such resort should clearly answer the question whether the patent is broad or narrow, or whether in any event the appellate court intended to leave it open—certainly as to this defendant—to contend for strictness or for a niggardly interpretation by which structures may be deliberately modified to evade details of Cowles construction, but still embody and encompass function and result.

Therefore, assuming that Cowles' specifications and claims are before us, as embodying a solution of what he states to be a broad problem and to achieve a like broad objective, as he states it, we may proceed to the

appellate court's estimate of his accomplishment; and this will be done with indicated emphasis on such parts thereof (that is, in that court's opinion) as persuasively aid in answering all, but particularly the first and fourth, of the foregoing questions. Necessarily this must proceed in recognition of the great breadth in language of the three claims litigated, particularly claims 9 and 11, recognition of the narrower character of claim 18, and like recognition of the attack upon the validity of this patent, so the record shows, upon practically every ground within a wide range, including inoperability, inadequate disclosure, lack of invention, general worthlessness, lack of novel results, complete anticipation, aggregation, abandonment, laches, estoppel, etc.

This is of some importance, particularly with respect to claim 9, and the concession and subsequent adjudication of infringement thereof; for, as will be seen, the defendant, though in position to do so, at no time suggested or admitted infringement of claim 18, or other narrower claim or claims not in issue (e. g., claim No. 5). It at no time suggested that it might infringe those claims, but not claims Nos. 9 or 11. And, as I view it, the parties left the case, both in the trial and the appellate court, with a concession of infringement of each and all of the claims. It was at no time suggested, nor attempted, defensively to lead either trial or appellate court to an adjudication that consideration of either validity or infringement must be limited to precise structural details disclosed in the patent. If it can now be said that the defendant had that objective, plainly it either failed to press it, or, pressing it, the appellate court failed to grasp it, or refused to accept it.

True, defendants (appellants) in their concluding appeal did seek to avail themselves of slight structural differences of possible pertinency to avoid infringement, but the general attitude in the appellate court is shown in their main brief:

"We have called attention to the fact that the Cowles structure is a worthless, impractical structure, which has never been made or operated, and that the patent in suit is a mere paper patent. Appellant (left) does not have the *sort* of hub-receiving members disclosed in the Cowles patent, nor the *sort of teeth or projections* which Cowles used. Such being the case, we urge that this is a proper case for the application of the rule laid down in" (citing cases, Boston Woven Hose & Rubber Co. v. Pennsylvania Rubber Co. [C. C. A.] 164 F. 557; Lovell v.

Seybold Mach. Co. [C. C. A.] 169 F. 288, Elvin Mech. Stoker Co. v. Locomotive Stoker Co. [C. C. A.] 286 F. 309—page 109, appellant's brief), which cases (dealing with the rule for interpreting patents whose structures, so the courts therein *found*, never appeared in the art) must have lost every significance when the court, trial and appellate, *herein*, negatived the hypothesis of the rule, and *infringement* was either conceded or found, without much question.

And the defendant's concluding appeal:

"Seldom have we seen a case so devoid of merit and so lacking in equity as that of the appellees in the case at bar. They are endeavoring to exploit as an invention that which never was an invention; to claim as a patentable combination that which never was a patentable combination, but, at most, a mere unpatentable aggregation; to recapture that which was, in essence, deliberately abandoned, first 25 years ago, and again 12 years ago; to idealize an imperfect, impractical, good-for-nothing structure, which has never been manufactured, nor even embodied, physically, in a model, nor made any appearance at all, at any time, save on paper; and, by means of a cunningly drawn patent, which should never have been granted, seek to suppress the manufacture and sale by defendant, and others, of structures in all respects practical and useful and that have proved acceptable to the public. If Cowles ever invented anything of a patentable nature, it is well covered by the multitude of patents for untried things that have been issued to him, and by claims other than the ones here in issue that have been allowed him."

With this as the attitude before the appellate court, we now quote the latter's response, obviously dealing with "the three claims in suit":

"The inspiration for this invention was a desire to overcome tire troubles in automobile operation. Tire difficulties were particularly vexatious and annoying during the early days of automobile travel. Numerous were the remedies offered. Some were quickly abandoned, while others helped in the solution of the problem. Probably the most satisfactory and outstanding contributions were the extra wheel and the demountable rim. A serious objection to the *extra wheel resided in the fact that the rear and front wheels were not interchangeable.* The rear axle and rear hub differed in purpose and construction from the front ones. Cowles labored to remedy this trouble. *His invention* made it possible for the manufacturer to

maintain but *one standard running gear construction, extending to axles and steering spindles,* driving shafts and bearings, usable with either *nondemountable wheels equipment* or with *demountable wheel equipment.* Cowles contends that he 'hit upon the happy thought of applying the demountable wheel idea to the ordinary driving shaft of a motor vehicle and the making commercially available and acceptable in that industry of the quick detachable wheel expedient, *by adapting it to both driving nonsteering and steering nondriving wheels in one and the same vehicle, so as to make interchangeable and spare wheel use universal.'*

"Cowles' invention dates back to 1899. The *art* prior to the advent of the automobile was represented by *wheels on wagons, buggies, and other vehicles.* Their purposes and uses *were quite different* from those on the automobile, and *naturally the hub and wheel structures were different.* The automobile necessitated a *set* of driving wheels and a *set* of *steering wheels,* both equipped with pneumatic tires. The *hub structure* of the driving wheels *differed* from the *hub structure* of the steering wheels. To solve the problem of tire blows and wheel breakage, Cowles offered his conception of *an interchangeable wheel,* with its *unique hub-receiving mechanism.* It is therefore apparent that he approached a somewhat different problem than that which confronted the wagon maker. There was *nothing* in the *prior art* that suggested his wheel or *hub structure. It was concededly novel.*"

Surely these views, couched as they are in language of liberality and generosity, can hardly be said to have been intended as responsive to a situation *other* than that pressed by the appellant for the *favorable* consideration of the court, or that, instead of dealing with the *breadth* of claims like 9 and 11, they were really addressed to practically obvious infringement of narrower claims importing elements such as "teeth" (claim 18), or "two concentric *tubular* members" (claim 5, not in issue), and not to claims 9 and 11 in issue, or, as defendant now seeks to limit it, to true and obvious *telescopic* inner and outer *hub members,* or that, while thus declaring the status, and the law, of a combination patent, it was yet intended by slight transfiguration of the *structure,* but not *function* of any mechanical element, and by *translation* of its *name,* to permit evasion or avoidance of the award of validity—"concededly novel"—comparable to which there was *"nothing* in the prior art" in, viz. a "suggestion" of his "wheel *or* hub structure" (I interpret the latter to mean, as well "his wheel *and* hub structure"), or that defendant, practically confessing infringement, if *any* validity appear, but insisting upon *no* validity whatever, has still reserved the right to contradict, during the life of the patent, every expression, every implication, every intendment, respecting scope as the appellate court awarded in response to the contentions of the parties, or that the patent thus far has received no judicial cognizance respecting either validity or scope, except such as was and is necessary to cover a practically confessed infringement, *if there is any validity;* that all else, in the appellate disposition of the case, is verbal and grossly mistaken and misdirected surplusage.

Without attempting to state further variant possibilities of dealing with the appellate disposition of the case, it is confidently believed that all the foregoing must be rejected as hypotheses upon which the patent or the appellate view may be re-examined, and thereupon limited, disparaged, or impugned, in respect of broad validity. Therefore the case is now before the court under a mandate effectively interdicting any and every right of mere transformation of structural elements of the combination, without change of function, thereby to avoid infringement, and, of course, deny breadth or liberality to Cowles. And, it may be added, this does not mean that Cowles obtained a patent on a "happy thought," nor upon the abstract notions of interchangeability, of demountability, nor upon such concrete elements per se, as a "concentric tubular member," or locking "teeth," or the like. But it does mean that Cowles has been adjudged entitled to liberal recognition on his *combination structure* which effectuates, *in a motor vehicle,* universal use of *interchangeable* and of *spare* wheels, and their *adaptability* and acceptability to and in driving nonsteering and steering nondriving wheels, in view of differences, functional and structural, between front and rear axles of a motor vehicle.

True, the appellate court, referring to the "existence of a similar thought and structure by an English mechanic," considered, necessarily, the (1) inventive quality and (2) priority of Cowles' work, as a part of the issue of validity. But, as has been intimated, when the issue has now been decided in Cowles' favor, the contentions are not to be re-examined, to impugn the award either of validity or of scope, which the appellate court so forcefully made. And I am confident that the Whippet wheel comes before

the court (for answer to the last question above) in the same manner as if it had been before the court originally, viz.: Does the patent, in view of its validity and scope—and now, in view of the adjudication binding on us—comprehend that structure? And that, of course, implies the application of ordinary rules for determining legal equivalency of mechanical elements and means in a combination structure. If, however, there is herein any necessity for this court now to recur to the question of scope or breadth of Cowles as the appellate court viewed it, and to discharge an obligation to form and render a judgment thereon, such judgment is now expressed as favorable to plaintiff's view; that is, that the Cowles patent was and is for a broadly novel combination, and, as such, upon the issue of infringement is entitled to receive liberality and generosity of signification and treatment. And it is confidently believed that, independently of the appellate court's view (which, however, this court should in no event treat as mere adventitious encomium), there is no hypothesis upon which the Whippet wheel can escape infringement, even if the Cowles patent have as a minimum of validity and scope that which was involved in determining Exhibits 1 and 2 as infringing. True, as may now be stated, that involves (1) the total rejection of defendant's claim of estoppel or the like, because of answering an interrogatory respecting *disc* wheel (Exhibit 3) and entertaining (2) the view that the *disc* wheel, though not before the court under charge of infringement, is *not* regarded as prima facie *non*infringing. And the grounds upon which these two views are entertained will appear in the attempts to answer the other questions.

■ We come to the question: What is the effect of adjudication of defendant's infringement (specifically Exhibits 1 and 2)? And, if it be given preliminarily the obvious answer that it brings the two specific structures *within* the patent, no matter what its possible greater scope may be, it likewise follows that it does not in the slightest degree suggest support for the *limitation* of the patent *to* those structures, nor concretely to the presence of "teeth," because projections in Exhibits 1 and 2 are their equivalent, nor because equivalent *wheel hubs* are found. The adjudication, the concession of infringement, contains no implication of *limitation* on validity (scope), whereby noninfringement in *other* structures may be readily asserted through mere variation of structural elements. In no sense, whether the infringement be confessed as a palpable copy or be

so held on principles of equivalency, can the adjudication serve to delimit *possible* equivalency. And particularly is this true where a broad claim, silent on configuration or detail of structural elements, and a narrower claim, are both held valid and infringed as against a structure, in fact not an identical copy, but an equivalent, in its elements, of the structure disclosed in the patent, and *covered by all claims in suit*. The polygonal interlocking projections of defendant were seen to be structurally quite different from the Cowles "teeth," but functionally identical; wherefore mechanically equivalent. But the ruling is not pregnant with an implication that the teeth, or polygons, may be transformed into immune "flanges" and "bolts."

On comparison of the patent with defendant's infringing structure (see, e. g., Figs. 5 and 6 of Defendant's Exhibit A, affidavit of Waterman on this motion), no one can fail to discern the structural differences between the so-called "wheel hub." Now, the claims are all silent upon any distinctiveness of any *wheel hub*, except (as will later be noted) as a *structural member*, which, however, will not, does not, and cannot function in the elemental manner of a wheel hub *directly* upon an axle. I assume that this difference (perhaps greater than the difference between "teeth" and "polygons" for locking) was not even suggested, because of obvious equivalency as structural "members," regardless of the necessity of calling them wheel *hubs*.

Now, to conclude this phase of the matter, it is confidently believed that the adjudicated infringement is not to be interpreted as meaning that claim 18 is valid and is infringed, because Defendant's Exhibit 1 has "teeth" or their equivalent which are an element of claim 18; nor that claims 9 and 11 are infringed, because of the infringement of claim 18; nor that all are valid and infringed, because, for example, "concentric tubular members" are present (as indicated in claim 5). True, in holding infringement of claim 18 there was found the element "teeth or projections adapted to fit," etc., or their equivalent, *but also* all other elements of that claim. But that was and is not in denial of either breadth or infringement of claims 9 and 11. Nor was or is it in denial of the validity of those claims, nor their scope and applicability to the structural disclosure of Cowles' patent, its mechanical elements, and, at least, *their fair equivalences in combination*. On the contrary, with respect to claims 9 and 11, the case is now here with a pronouncement of the appellate court

as effective as though stated in these words: "Defendant's Exhibit 1 infringes, because it contains in a motor vehicle the combination with front and rear stationary axles, steering spindles, with *hub*-receiving members rotably mounted on such spindles, a driving shaft *rotably within* the rear stationary axle, *hub-receiving members* on the ends of the latter and *connected to be driven,* and wheels having *hubs adapted* to be *removably* secured, *interchangeably,* to said receiving members."

And I conceive it to be beyond the power of this court now to say that that pronouncement was intended to be and can be effective *only* to *limited* equivalences—to such as structurally are practical copies of Cowles' disclosure in his drawings. It is not conceived within its power or right, now, upon issues of infringement, by indirection, to cut down that breadth and scope which really inheres in the recognition of *any* validity.

The third and fourth questions may be considered together. Defendant, in dealing with the interrogatory and its answer, has given the matter quite a range of characterization—"estoppel," "admission," "immunity," "attempt to blow hot and cold," "disclaimer," "change of front," and possibly others. If the situation involves a consideration of either ancient or modern principles respecting solemn declarations by parties in their pleadings, in discovery proceedings, in interrogation under the present rules, I think the defendant is far short of bringing the facts within any applicable principle suggested by any of the characterizations. And this does not mean that the interrogatory and its answer were and are *wholly* ineffective. Suppose—taking an analogous case (and which, as an analogy alone, is not any better than the present case)—a plaintiff, in charging a defendant, at law or in equity, with trespass by entering upon land, and more specifically with cutting and removing *pine* trees, prayed for damages or for a restraining order. Would his failure specifically to enumerate the cutting of elm and peach trees bar him thenceforward and *irrevocably* from comprehending that within the quantum of trespass to be compensated or restrained? Would any one say that if an injunction went against further trespass—pine trees (only), specifically—the defendant *thereby,* and in view of plaintiff's failure, acquired a right *in perpetuity* to continue entering upon the land to cut *elm* and *peach* trees? Or that at law the right to compensation for the excluded items had been irrevocably waived?

True, there may be good reason to say that, if all damage was done in a single tres-pass, then, having had full opportunity to prove *damages* by including *elm and peach trees,* if *they were cut,* his failure to do so is not immaterial; that he can always relitigate the same *trespass,* and from time to time supply items of damage existent, but omitted, on the earlier occasion. There may be good reason for denying a right, at law, to *split damage,* and to proceed in successive actions on a *single* trespass. But even then the plaintiff is merely barred in respect of the defaulted items. He is not estopped from asserting that the defendant's act was tortious, or from denying that it was rightful, or from denying that he intended to acquit him, or that he intended by his default to give the defendant a bill of sale for the timber *not* proven to have been, though in fact, cut. In no event can the failure to charge or to prove a part of the trespass, and its ensuing item of damage, serve to dedicate to the trespasser the uncut timber, or license him to cut it. In no event can a failure to assert all of successive or concurring separate trespasses operate to waive or estop in respect of omitted ones. The failure or default is not an *admission* of the defendant's past nor future *right.*

Now, supposing a defendant, against whom a broad charge is lodged, and having as good consciousness as a plaintiff of what may be sought to be brought within the charge, seeks to interrogate or catechise the latter in respect of items. And we may take either the suggested analogy, or the very case before us. The question, "Do you charge me with trespass for cutting elm and peach trees, *which* I admit I cut and removed from your land?" may be far different from, "Do you charge me with cutting elm and peach trees?" And both may be different from the query, "Do you charge that the elm and peach trees, which I cut *somewhere,* were cut and removed from your land, thus making me a trespasser?"

And here defendant, submitting to plaintiff three structures, interrogates whether plaintiff *charges* each to be an infringement. It is assumed that defendant, by admitting the *fact* of selling, did not intend to admit the infringing *character* of the structure. Did plaintiff, by answering that they *do not* so charge, *admit* the *noninfringing* character? Would plaintiff, in the analogous trespass case, by answering that he did not *charge* cutting of elm and peach trees, *admit* that he had no title to that part of the land where such trees stood, that it was public property, and that defendant lawfully entered, or, further, that defendant did not cut them?

There is good reason in what is conceived to be common practice to hold a party to a position taken in a lawsuit. But whether it be a pleading, or, as here, in an answer to an interrogatory, the question always is: To what was the real position or answer *responsive,* so far as the adversary is concerned? In a patent suit, the plaintiff's cause, usually, has two elements: (1) His right or title, and its scope; (2) the defendant's alleged invasion, and, sooner or later, *its* scope. The scope of either may be, or may be asserted to be, broad or narrow; but the latter, the scope of invasion, can never be broader than the scope of plaintiff's right; that is, a defendant cannot invade a right which plaintiff does not possess. But a plaintiff's failure, or *refusal,* to charge the broadest possible scope of defendant's invasion in fact—whether or not he knows, or cares, or for whatever reasons—cannot be and is not in denial of his right or title, or its or their *scope.*

Neither electing to charge a narrow, nor refusing to charge broad or extensive, invasion, can cut down the *scope* of right or title. A plaintiff may be content to assert the whole of the latter, and still be content with redress for but part of the invasion or infringement—for the purpose, or to a *certain point* therein, at his election, of a particular proceeding. If this be not so, let us test out the defendant's position. Plainly, if the interrogatory and its answer bar the plaintiffs as an equitable and perpetual estoppel, if *that* is the bar, it rests, not only upon the plaintiffs, but on the court. And, as suggested on oral argument, it leaves the defendant where, in its answer, or through its witnesses, or otherwise, if it pleased, it could *confess Exhibit 3 to be ever so infringing;* or, putting it from plaintiffs' side, by electing not to *charge* invasion, they had forever confessed away or dedicated to the public, and particularly to the defendant, an undoubted right; that the law, as we may put it, stated an account between a broad right and a limited invasion, and gave away any excess of the former over the latter.

What effect is to be accorded to the interrogatory and its answer? Plainly this: That thereby the plaintiff elected not to press Exhibit 3, *in this suit, at that time* in evidentiary support of a charge of infringement. It left the case, as far as the defendant was concerned, in a negative position, one of noncontention on plaintiff's part; in a position where, if plaintiff prevailed upon the issues of validity and infringement *as they were litigated,* the defendant was not held to answer or account for any act, as an infringing act, in respect of·Exhibit 3; that upon contempt proceedings for violation of a restraining order, preliminary or final, or in an accounting, the defendant could respond solely on the ground that plaintiff had not charged, nor *had the court heard,* Exhibit 3, wherefore defendant was first entitled to *opportunity* to litigate that structure—that is, if the defendant insisted that the differences were more than colorable; i. e., honestly debatable. This very circumstance furnishes the occasion for supplemental bills, and therefore the industrious "saving" clause of the final decree in the present case, "exempting" "any vehicle wheels or vehicles equipped with vehicle wheels of the detachable *disk* construction, * * * Exhibit 3, * * * referred to in the * * * answer to defendant's interrogatory No. 5," saves nothing more nor less than that which, without the proviso, without the interrogatory and its answer, is always saved by *legal implication.* It is not an adjudication of *non*infringement. It is not "saved" or "excepted" as *noninfringing,* but as *nonlitigated.*

And obviously, if plaintiffs were now contending—not that Exhibit 3 infringes, but— that its infringement *had been* heretofore *litigated and adjudicated,* the defendants could, in my judgment, invoke the record of the interrogatory, its answer, and the saving clause of the decree, as a conclusive estoppel against the *latter* contention. That, in my judgment, is the only estoppel created; and, except for that, Exhibit 3 never has been, is not, in this case in an issuable sense, and it cannot come in at the instance of the plaintiffs, except upon appropriate charge which the defendant must answer. True, though the structure of that exhibit had been eliminated from the *charge*—by the interrogatory and answer—it received testimonial consideration by the defendant, possibly by plaintiff, which, as will be seen later, is conceived to bear most persuasively upon plaintiffs' present contention against, not Exhibit 3, but the Whippet wheel.

I am also mindful that defendant's original answer contained broad structures covered by the interrogatories propounded concurrently with answering. But, as has been said, when the interrogatories were put, the answers that two were, a third was not, *charged* to be infringing merely withdraw the latter from the range of tne broad charge of the complaint and the broad denial of the answer, and eliminated it from the issue. In the sense and to the extent indicated, the plaintiffs are "estopped" from claiming that

the structure was litigated and held infringing, but not that, by withholding the charge against it, withdrawing it from issue, from determination *one way or the other*, it is made as effectively *noninfringing* as though the issue had in fact been tried and resolved in defendant's favor. No one has suggested that, had the plaintiffs answered the particular interrogatory the other way, defendant would have *admitted the infringing character of Exhibit 3*.

But there are other phases deemed to bear pertinently upon the course pursued by the defendant; also, its present attitude. The status of Exhibit 3 at this time, in view of the defendant's position, involves, among others, two considerations, the first of which has been referred to:

(1) Is Exhibit 3 at this time to be viewed as conclusively noninfringing, because of the estoppel said to arise out of the interrogatory and answer? Or,

(2) May the court now originally consider the status of Exhibit 3; i. e., whether it should be ruled infringing or noninfringing, upon the evidence in the main case and upon a showing on the present motion?

Plainly, neither of the parties, notwithstanding the evidentiary reference on the original hearing to Exhibit 3, should or does say that, within issues, it was considered with a view of applying applicable principles of the patent law to determine its infringing or noninfringing character. It is, however, worthy of note that the defendant, on the original hearing, brought up Exhibit No. 3 for testimonial consideration, not, however, with the idea of differentiating it, as it is now attempted to differentiate the Whippet wheel, by claiming limitations on the patent, which distinguished it from Exhibits 1 and 2, *but in support of the* claim of *invalidity*, in pressing which it endeavored to show *that Exhibits 1, 2, and 3 were not only alike, but in detail legal equivalences.* Further, that the defendant, though interrogating the plaintiffs respecting their attitude toward Exhibit 3, probably expected a categorical answer; but that the latter answered that they "do not *charge* infringement of the claims enumerated in the bill of complaint *with reference* to *the particular construction* shown in the drawing, Defendant's Exhibit 3."

Of like importance is the implication in propounding three different questions relating to three different structures, two of them referring to "Budd *wire* wheels," and the third, Exhibit 3, to "Budd *detachable disc* wheels." No matter, however, what reasons may have prompted the form of the question (respecting Exhibit 3) or its qualified answer, even if that exhibit may now be brought before the court for any consideration, the defendant, in my judgment, has placed upon itself by the record in this case a heavy burden in attempting to compel the plaintiff to litigate and the court to consider it (Exhibit No. 3) as the *measurer* or *determiner* of the infringing or noninfringing character of the Whippet wheel. Whether or not the court accepts the defendant's contention on this matter of conclusive estoppel, the testimony in the main case, the physical exhibit Whippet wheel, and, as I feel, the testimony upon the present hearing, particularly that coming from the defendant, most persuasively supports the plaintiff's right to proceed in the ordinary and rational manner, by inquiring, basically, *not* whether the Whippet wheel is like Exhibit 3, whatever *it* may be, but whether, upon the application of the patent, as having the character and attributes (scope) awarded by the courts herein, upon considering infringement through Exhibits 1 and 2 (not now open to question), Whippet wheel may be brought within infringing range. It cannot be that the defendant can close that as a normal and rational avenue of approach. If it can, the case may come to an impasse in these two hypotheses:

(1) That Exhibit 3, the disc wheel, is noninfringing because plaintiff did not charge it to be infringing;

(2) That Whippet wheel, though like Exhibit 3 and susceptible of being held its equivalent, is yet the *clear equivalent of Cowles.*

This is upon the assumption, which is unhesitatingly entertained, that the Whippet wheel and the disc wheel are not structurally alike. And, at this point (regardless of whether the disc wheel Exhibit 3, if before the court, would be held to be infringing), it may suffice to suggest the strong support which the plaintiffs derive in their contention that the Whippet wheel is the equivalent of Cowles, to cite from the main case the testimony given by a witness, much relied upon at present (Waterman), to establish the equivalency between Exhibit 3, the disc wheel, and Exhibits 1 and 2, held or practically conceded to be infringing. This witness, being shown a chart representing Exhibits 1, 2 and 3, the two former being wire and the latter the disc wheel, said of the latter:

"In the second figure, which is wheel of Defendant's Exhibit 3, a so-called disc wheel

is shown. In this instance the member has a flange to which the felloe and the disc or *sustaining portion* which replaces spokes, are attached by a series of bolts. To replace a tire it is only necessary to remove these bolts and withdraw the wheel from the felloe down to the hub, *but no actual portion of the hub itself being removed,* unless *this engaging flange on the disc portion* is to be *reckoned a part of the hub.* But the *same object is secured,* namely, the *ready replaceability of* incapacitated tires." Waterman's testimony, C. C. A. Record, pp. 114, 115.

If, therefore, the idea of estoppel is to be considered at all with reference to its justice, this excerpt rather persuasively suggests that the plaintiff might well have answered the interrogatory the other way. But its significance rests in this: That the disc wheel, Exhibit 3, was and is not within the issues. If the defendant, the idea of estoppel being rejected, still insists upon comparison of Exhibit 3 with the Whippet wheel, upon the assumption that the former is not in fact infringing, we are still left with the hypotheses last above noted, but capable of being extended:

(1) The answer to the interrogatory does not estop the plaintiff from charging the infringing character of Exhibit 3.

(2) Exhibit 3 may or may not in fact be infringing. Exhibit 3 and the Whippet wheel may be equivalents of each other. Either or both may properly be held to be within the Cowles patent.

It would seem to me grossly unjust that, whether the court accepts or rejects the idea of estoppel, the plaintiff is required to approach the consideration of the infringing character of the Whippet wheel by any reference to Exhibit 3; and the same thing is true, if, at the instance of defendant, Exhibit 3 be now insistently placed before the court as a basis of determining the character of Whippet wheel. The question is whether the latter is within the law of Cowles, not whether it is within the law of Exhibit No. 3, *whatever that may be.* And I am well satisfied that plaintiffs may rightfully litigate the status of Whippet wheel solely in the light of patent, of Exhibits 1 and 2, which were held to be infringing, and of every intendment, either *of validity or scope, to* which they may be entitled as herein indicated. It strikes me as the normal and rational method of considering an issue of infringement, either originally or supplementally, and when the court has rejected, as it does reject, the contention respecting estoppel,

the duty to thus proceed must be discharged, regardless of the fate of Exhibit 3.

The other course—involving, first, an estoppel, regardless of *real* infringing or noninfringing status of Exhibit 3; secondly, the *assumption* of its real *non*infringing character, wherefore equivalence between it and Whippet may be *asserted,* and hence between the latter and Cowles *denied*—impresses me as not only wrong, but, it is suggested, with respect, and with no purpose to offend, as savoring of *finesse;* and it is believed that this suggestion will be justified in the ensuing analysis of the structures, and of the proofs, particularly those tendered by the defendant.

We reach the question: Does Whippet infringe? And a discussion may be prefaced by again referring to the indicated determination of the trial and appellate court in this case in respect of validity and scope of the claims in suit. It is confidently believed that the court cannot entertain the thought that there has been, or is, a definitive limitation upon the claims in suit, or upon any of their elements, which must now be recognized and enforced for the first time. Neither the art nor the record in this case— with the encomiums which have been judicially bestowed upon Cowles—even suggests that, in the *combination* covered by the claims, "hub-receiving *members*" were or are required to be defined as including one, or excluding another, structural form thereof; or that "wheels having hubs adapted to be removably secured" included such as had distinctive or true hubs, and excluded those which structurally were transformed, so that in appearance they might be called something else, but are mechanically and functionally the exact equivalent, with identical *adaptability* "to be removably *secured,*" interchangeably, to said *hub-receiving members";* or that it was forbidden to Cowles, but permitted to the world, to use anything but a hub of the distinctive form of a true hub, though not functioning as the latter; or a locking and centering expedient between outer and inner hubs, except such as could be called "teeth," or, now, polygonal projections, in conjunction with a particular form of hub cap.

There is nothing to suggest that the centering or locking expedient—either "teeth" or "polygonal" projections—were *the* things, which, upon original hearing of this case in trial and appellate court, *saved* Cowles' patent upon the art. The broad view expressed by the latter court, as has been indicated,

cannot now be interpreted to mean that—dealing with a combination—nothing was new to Cowles, except the precise form of his elements and subelements. The very character of the combination should frustrate the suggestion now persistently put forward that Cowles' "wheels" comprehended only the simplest form of wheel, having present therein simple spokes passing from hub to felloe, the hub rotating in its elemental manner directly upon an axle; or even having, as will be noted, a "hublike attachment," which must be indubitably "telescopic" or "concentric." The estimate given by the appellate court is consistent with the want of novelty of any element per se. The combination and its organization of mechanical elements, as disclosed by Cowles, is held to be such that it must eliminate the elementary notion of a wheel with a particular kind of a hub and an axle, by the interposition of *further mechanical elements* or subelements.

On this motion, the parties have dealt with evidentiary matter: (1) The record, including exhibits of the former hearing; (2) the structures (included in 1) held infringing; (3) the Whippet wheel and axle structure; (4) three affidavits, with their accompanying exhibits, drawings, etc.—Erskine and Ash, on behalf of plaintiff; Waterman, on behalf of defendant. Except for a further showing dealing with asserted equities to be considered on preliminary hearing, these proofs, as observed at the opening hereof, are conceived to embody everything which, as fact matter, bears now or ultimately upon the contentions of the parties. And if thereupon the court can reach a conclusion, not exclusive of every possible doubt, but one which, upon evidence conceived to be of the ultimate character noted, justifies a conclusion in the sense that, as at present advised, the contentions will be and remain the same upon the same evidence with the same result, every rule of rigor or of caution respecting injunctions pendente lite will be vindicated by awarding one, if that be the conclusion. Obviously, if, *upon the showing,* there be doubt respecting the conclusion, not, however, the *possibility* of any, or of a conjectural doubt, the injunction should not be awarded. To state it simply, is the right, and is its invasion, *clear?*

If, now, we proceed to a consideration of Whippet, as it is (1) exemplified in the physical structure in evidence on this hearing, (2) illustrated in the blueprints attached to the affidavits of Erskine and Ash, and (3) in the drawings (Figures 4 and 8) of Exhibit A, affidavit of Waterman, we may at once inquire, perhaps somewhat conventionally, whether the claims in suit may be applied thereto; whether, as it is said, they "read" thereon; and this, in recognition of some differences in the claims. Obviously, if a contention of defendant for definitive limitations of elements in the broader claims fails, it may avail little, if anything, to discuss avoidance of infringement by showing structural transmutation of a specific element in a narrower claim.

Probably no one would venture to deny that, considering Cowles and Whippet, they are clearly in the same field, that they have and achieve, broadly speaking, identical broad objectives, and as the question now concerns elements in combination, it may clarify—though perhaps not abbreviate—our view to consider the elements of Cowles as the claims state them, and, as we are obliged to note, as the course of the litigation has given them, or, as we now must give them, implications, positive and negative. Therefore, referring to claims 9 and 11, as has been adverted to, the combination, being in a *motor vehicle,* is by the latter fact, so the appellate court declared, found to be differentiated from the prior art of "wheels on wagons, buggies, and other vehicles," whose "purpose and uses were quite different from those on the automobile, and, naturally, the hub and wheel *structures* were different, "because of a *set* of driving and a *set* of steering wheels." Admittedly, the combinations found in both Cowles and Whippet are with "the front and rear stationary axles," and include (1) "steering spindles pivoted at the ends of the front axles"; (2) a "driving shaft rotatably arranged within said rear stationary axle." The remaining elements, on Cowles' statement, are

(1) "Hub-receiving *members* surrounding and rotatably mounted upon" the front axle spindles.

(2) *Hub*-receiving *members* on the ends of the rear axle and connected to be driven by the driving shaft.

(3) *Wheels,* having hubs *adapted* to be *secured, interchangeably, to* said hub-receiving members.

What concessions must be made on behalf of Whippet in respect of its combination? Certainly these:

(1) That it has *some sort* of a *receiving member* (to receive *something*) surrounding and rotatably mounted upon the front axle spindles.

(2) That it has like *"receiving members"* on the ends of said rear axle and connected to be driven" by the shaft.

(3) That it has wheels, having *something* where the "hubs" of a wheel are *usually* found.

(4) That the wheels, having the *thing* or *things* last noted, are *adapted* (presumably thereby and therein) to be *removably secured*, interchangeably to said *some sort of receiving members*, rotatably mounted, or connected, respectively.

Now, approaching it in this way, and bearing in mind that Cowles was acquitted of being a mere aggregator, it is of some significance that the defendant has introduced at least the same *number* of elements as are found, in particular claim 9, and, if a concession be made respecting anti-friction bearings, of claim 11, and subject to consideration of equivalency respecting "teeth or projections," of claim 18. But of further significance is this: That if the *things* comprehended in the four concessions above be regarded as *elements* in Whippet, and be added to those elements which are admittedly, eo nomine, common to both Whippet and Cowles (the spindles, axles, driving shaft, etc., supra), they are not only identical in number, but identical in their separate and combined *order, relationship, function,* and *result* with Cowles. I am not now speaking of structural *form* of any element. And if this view, in which parts of the defendant's combination are referred to as abstract mechanical *things,* rather than more definitively, is tenable, it is now clear that defendant's problem—and the proofs show that it so appreciates it—is to try to *define itself out of* a much more than prima facie equivalency. Attempts to deny or to limit definition of an element in a patent claim, or to form and apply a different definition to a modified structure, are quite apt to be—and they are here—indistinguishable.

Taking now the Whippet structure in evidence as a physical exhibit and the blueprint, Plaintiffs' Exhibit 5 (affidavit of Erskine), I accept Erskine's description as clearly indicating the structural parts with which the parties are dealing on this issue (italics supplied for further reference):

"The left-hand figure [on blueprint, Exhibit 5] shows the front axle assembly, and the right-hand figure shows the rear axle assembly. Each *wheel* comprises a *hub, 2,* and wire spokes extending from opposite ends of this *hub* to the rim or felly on which the tire is mounted. Referring first to the left-hand figure, *10* represents the fixed axle, and *5* the pivoted or steering spindle. A *hub-receiving member,* or *inner hub, 3* is mounted on this spindle with interposed anti-friction bearings *18* the *wheel hub 2* fits over this *inner hub* and is removably interlocked with it. Referring to the right-hand figure, the numeral *81* designates the fixed tubular rear axle, and *23* designates the drive shaft, which extends through and protrudes beyond this axle, which interposed anti-friction bearings *27.* The rear *inner hub* or *hub-receiving member* is designated *24.* It is keyed to the protruding end of the drive shaft, so as to turn therewith. The *wheel hub 2* fits over this rear *inner hub;* is *removably interlocked* with it in just the same manner as the *wheel hub* is interlocked with the front inner hub."

Proceeding now to the showing on this hearing, from the defendant's side, the affidavit of Waterman directly, and in its references to record and other proofs, embodies the mechanical argument. Annexed thereto, as defendant's Exhibit A on this hearing, is a set of drawings of front and rear axle assemblies, viz.: Figs. 1 to 5 of the Cowles patent disclosure; Figs. 2 to 6 of the Defendant's Exhibit 1 of this case, said by the witness to be in substance like Exhibit 2 of this case, both the subjects of interrogatories, and both held to be infringing; Figs. 3 and 7 of Exhibit 3 of this case—the *disc* wheel which was the subject of interrogatory—*not charged* by plaintiff to be infringing; Figs. 4 and 8, the Whippet wheel. Rather clearly does it appear that, though the issue is between Cowles and Whippet, the witness felt impelled, in his affidavit, with some iteration, to recur to the interrogatory and its answer dealing with the *disc wheel,* presumably thereby better to enable comparison of Whippet *therewith,* rather than *directly* with Cowles, or with Exhibits 1 and 2. And undoubtedly this was necessitated by the structural differences between Whippet and the *disc* wheel.

The mere *assumption,* express or implied, of the latter's *noninfringing* status, did not aid the witness, nor does it now aid the court, in reaching the conclusion that Whippet does not infringe Cowles—whether it is or is not like Exhibit 3. Conceding that Whippet is like the disc wheel merely advances us to the next hypotheses (as has been indicated), whether *both* may not still infringe. Excerpts about to be quoted are not taken for the purpose of considering the disc wheel in an issuable sense. They do, however, indicate the manner in which rather clear *prima facie* equivalences between Whippet and Cowles are attempted to be resolved, or defined away. The witness had testified on the original hearing, not only to the generally inoperable character of Cowles, but also to the clear noninfringing character found both

318

in structure and *purpose* of defendant's then alleged infringements (Exhibits 1 and 2). He now, after some detail of reference to Cowles' specification, gives this estimate:

"It will be seen that in this Cowles construction, therefore, two sets of provision for *engagement* of the inner hub-receiving members are made: *One*, an *extended bearing surface, coaxial* with the shaft, which centers the inner hub-receiving member and wheel with reference to one another, and provides for the supporting forces and lateral strains; and the other, a series of *engaging projections* to take care of the torque forces."

Thereupon, in an analysis of defendant's structures 1 and 2, held to be infringing, the witness *now* finds therein "extended tapering bearing surface," which there "fits in telescopic relation the *hub* of the wheel *proper*," so that centering and meeting of strains is accomplished. And the witness (perhaps now aided somewhat by the affirmed decree of infringement) concludes:

"It is clear that, while the construction of defendant's Exhibits Nos. 1 and 2 differs *in its details* from the construction shown in the Cowles patent, it is similar to the Cowles structure, in that there are telescoping inner *hub-receiving members* and co-operating *hub members* on the wheel *proper*, giving support or bearing surfaces *widely* separated in the direction of the axle, constituting the *equivalent* of the *widely extended* bearings of Cowles, and that there is provision to prevent rotation of the *wheel hub* upon the inner *hub-receiving* member, due to the interengaging polygonal surfaces. There is, therefore, *substantial* similarity as to the *telescoping engagement* of the *hub* of the wheel proper and as to the means for effecting the *interlocking* driving engagement of the two."

These excerpts very obviously disclose the witness' conception of, or purpose to ascribe to Cowles, the indicated limitations; to exclude from the combination everything which has not telescoping hub-receiving members; wheels which have *not hubs* which *telescope* such *members;* everything which has not the conceived structural aspect, *supporting or bearing surfaces widely separated* in the direction of the axles, and, apparently, interlocking means; and, lastly, everything which, for interlocking, centering, or the like, may *not* be called "teeth" or "polygonal projections."

It is probable that, in the foregoing, the witness was merely taking a step (1) to fortify the assumption; or (2) to aid in a demonstration, of the *noninfringing* char-acter of Exhibit 3, the disc wheel; for, after a reminder that the disc wheel was "expressly excluded from the decree" herein, he proceeds:

"This construction makes use of the bolting of a wheel *body* to a radial *flange* carried by a *hub*, which was an *old expedient* in the art, whether the wheel *body* was of the disc type or the spoked type."

And the conclusion is reached that it does not have what the court found to be the *"unique* construction of the Cowles *hub*—apparently assuming the adjective to be applicable *only* to a *wheel hub*, distinctive because of extended bearing surfaces, *telescopic*, and the like, as it is now sought to define them. I conceive that the appellate court used the characterization in an effort to recognize breadth of his combination disclosure, and not to limit form or mechanical ingredient of any element or subelement. The court said "hub mechanism." The witness, however, having premised the indicated adjective limitations, naturally found that the disc wheel does not embody them. Thus, having discussed Exhibit 3—the disc wheel —as noninfringing, this estimate of the Whippet wheel is then given:

"The court will readily recognize that a wire-spoked wheel cannot have lateral stiffness, unless the slender wire spokes are straddled; that is, diverge from the rim at an angle, so as to meet their *central anchoring member* at points *widely separated in the direction of the axle*. This *anchoring* member *45* in the Whippet wheel is a *central shell* extended horizontally for the purpose of *permitting* this straddling relation of the spokes."

In commenting upon this, it may first be noted that the numeral *45* refers to the drawings, Figures 4 and 8, Whippet wheel, Defendant's Exhibit A, affidavit of Waterman, and that it is identical with Erskine's reference, by numeral *2*, in Plaintiffs' Exhibit 5, to that part of the Whippet structure which Erskine calls the *hub*. Waterman thus finds that *wheel hub* has now disappeared, and, at the point where normally found, there is a *"central anchoring member,"* or *"central shell"*—discharging, however, only the limited function of holding spokes and permitting their straddling. He continues:

"These Whippet wheels are directly interchangeable with disc wheels. The hubs (*40* for the front axle and *41* for the rear axle; see exhibit attached to affidavit), like those of Defendant's Exhibit 3 (disc), are provided with *radial flanges 42, carrying bolts* provided with *conically seating* nuts *44*. The

flange of the *central shell* of the wheel *body* is provided with *holes* therein, spaced and arranged *like* the *holes* already described in the disk wheel of Defendant's Exhibit No. 3. When the Whippet wheel is slipped into position, the holes in this flange (of this *central shell;* court) are *alined* with the bolts carried by the radial flange of the *hub,* and, upon nuts *being applied,* the wheel is centered and sustained against all of the strains by this *single* attaching and supporting *means.* It will be seen that, as in the case of Defendant's Exhibit 3, there is no other *engagement* whatever of the wheel *body* with the vehicle hub. The disc wheel *proper,* of course, has no *distinctive* hub."

And it would seem that, with some skepticism of the clear applicability of any of the foregoing, particularly the last two sentences, to Whippet, in the light of fair equivalency, this final limiting observation is made:

"If the *central shell 45* of the wire-spoked Whippet wheel *may* be called a *hub,* it is only because it supports the wire spokes and *not because* it has any *hub*-like engagement with the *vehicle* axle. The construction is as though the *flange* on the *hub* were extended to connect with the felloe, but made in two parts, *as was old* in the art."

If, therefore, we accept this as defendant's position, and counsel upon argument and in briefs reiterate it as such on this issue, then in justice to Cowles it is proper to state the two positions, to see whether Whippet must be excluded. For illustrative purposes, it will be fair to endeavor to take as elements in each those which they admittedly have in common, and as to Whippet state the controverted ones (abstractly conceded hereinbefore) in the differentiating terms used by Waterman.

Claim 9 would thus appear:

| Cowles Patent. | Whippet—Waterman. |
|---|---|
| 9. "In a motor vehicle, the combination, with the front and rear stationary axles, of steering spindles pivoted at the ends of the front axle, hub-receiving **members** surrounding and rotatably mounted on said spindles, a driving shaft rotatably arranged within said rear stationary axle, hub-receiving members on the ends of said rear axle, and connected, to be driven by said driving shaft, and wheels having hubs adapted to be removably secured, interchangeably, to said hub-receiving members." | "In a motor vehicle, the combination with the front and rear stationary axles of steering spindles pivoted at the front ends of the axle, *anchor,* or *central shell* receiving members surrounding and rotatably mounted on such spindles, a driving shaft rotatably arranged within said rear stationary axle, *anchor* or *central shell* receiving members on the ends of said rear axle and connected to be driven by said driving shaft, and wheels having *anchors* or *central shells* adapted to be removably secured interchangeably to said anchor or *central shell* receiving members." |

This method of comparison might be carried to the other claims, by introducing therein the names given to changed configuration of parts; but, basically, defendant's position may be tested on the foregoing. Now, taking the parallels, and assuming, as we must, that Cowles embodies a valid claim of a combination structure adequately described, and taking the elements or parts, piecemeal, would skilled artisans, on examining Whippet structurally, and reading the paraphrased claim, fail or refuse to discern structural part, *"anchor* or *central shell receiving member,"* as the *hub-receiving member* of Cowles? Would they likewise fail or refuse to discern in the wheel *any* part, no matter how configured, which definitively could not be called a sort of, a *quasi,* a hybrid, or at least a false, or an evasive, *wheel hub?* Obviously, they would discern that they were not dealing with the simple combination of (1) a vehicle axle and (2) a wheel, comprising (a) rim, (b) spokes, and (c) a hub turning *directly* on the *vehicle axle.* Therefore neither Waterman's observations that *disc* wheel, Exhibit 3, "of course, has no *distinctive* hub," and that, "if the *central shell 45* of the wire-spoked Whippet wheel *may be called* a *hub,* it is- *merely* because it supports the wire spokes, and not because it has any *hublike* engagement with the *vehicle axle,"* bear relevantly upon equivalency of elements found in these combinations which, inherently, must have elements *not* found in the simplest wheel and axle structure. Waterman's observations merely advance the query: What is a *"distinctive" wheel* hub in any of these larger combinations? And, howsoever this be answered, if the attempted definition comprehend Waterman's implied ingredient of a *hublike attachment* to the *vehicle axle,* not one of the combinations has (or as I believe can have) *that* sort of a *wheel* hub.

Upon the original hearing the defendant sought to assure the court that the disc wheel was operatively, and functionally, like Exhibits 1 and 2, now clearly infringing, and that no "actual portion of the *hub itself* being [is] removed, unless *this engaging flange* is to be reckoned a part of the hub." It may well submit now to the conclusion that Cowles did not import, into his *wheel* hub, *distinctiveness* which, particularly as to *form,* precise *method of attachment,* extensiveness of *bearing surface,* must now be held to be indispensable ingredients of *adaptability* of his wheels, in the accomplishment of the object. In other words, *distinctiveness* of *wheel* hub was not of essence in his broad

invention. He did cover a distinctive form, "tubular," "concentric"—defendant now insists on "telescopic"—in claim 5. And clearly he never introduced as a distinctive ingredient the "*hublike* attachment to the vehicle axle." Likewise, on the main hearing, the court was not urged to find a distinction between structures 1 and 2 and the disc wheel, because of variant expedients to achieve removable security or interchangeability. Equivalence really passed upon assumption.

If the question were then necessary to decide, as we have observed, Cowles could not have claimed, as a limited discovery, interlocking or engaging *method* between two mechanical parts, as in "teeth," "projections," or the like, and the defendant did not then claim, though it brought the disc wheel before the court, that it was distinguishable, in a legal sense, from Cowles or from Exhibits 2 and 3 on *that* ground. It did seek to claim that Exhibits 1 and 2 were different from Cowles, but sought to assure the court of *their* identity with the disc structure. But, even if difficult to reach a conclusion, I think it is open to very serious question whether, upon comparison of the Cowles patent disclosure with Exhibits 1 and 2, the form, for example, of the wheel hub structure in the latter is not far more variant from the former than is the Whippet wheel structure from the latter. I am speaking now of comparative configuration in its pertinency upon present contentions of necessary *distinctiveness*.

As I view it, the infirmity of the defendant's entire position rests in its inability to meet what, on the face of it, appears to be mere translation of structural or mechanical form of Cowles' elements with retention of every function and interrelationship, and a like translation of his words. The defendant, in characterizing a part of the Whippet wheel as an "anchoring" or "central shell," and in its reference to a "radial flange" of the "receiving member," while pointing out the obvious structural changes, rather studiously avoids denying equivalence between the bolting-on method and Cowles' disclosed method of interlocking and centering. Here it must again be recalled that, in the broad claims in question, Cowles prescribed no distinctive method. If, as one witness said, interengagement and locking are, and must be, "implicit," then that fact alone relieved Cowles of the necessity of disclosing and claiming *every* structure or means for effecting it. And, having disclosed one, there is nothing now to hold him to exclusiveness. His combination is not to be avoided or evaded by selecting equivalents which must also be "implicit."

In the defendant's position, disclosing what is deemed mere translation, it has failed entirely to meet certain details of Whippet construction, which have, and can have, no effectiveness, except to render equivalences complete. Such are the "flanges," both on the central shell and the "*hub*-receiving" members. Their effectiveness—the one, as a part of a "hub," or "shell" member; the other, as a part of a "receiving" member—to carry out the identical functions of centering, locking, meeting of strains, etc., found in Cowles, is undeniable. By this is meant that the "central shell" is not in fact limited as an expedient to take care of spoke straddling, nor, in its contact, with its effective bolted flange, in the latter's relationship to precisely interchangeable bolt holes and conical nut fastenings on the "radial," can it be regarded otherwise than the clear equivalent of Cowles' structure, no matter how "hubs," "wheels," or "members" be attempted to be defined or characterized, in words, in either structure. I accept the affidavit of Ash on this phase of the matter as an unanswerably clear response to Waterman.

The conclusion is that the plaintiff has established its right, and the defendant's invasion, clearly. And there are no other equities which are conceived to be adequate to prevent the issuance of the preliminary writ prayed for.

An order may be entered accordingly.